1 | SCOTT A. FLAXMAN (SBN 241285)
SCOTT A. FLAXMAN, ATTORNEY AT LAW
2 | 21 Buena Vista Road
South San Francisco, CA 94080
3 | Telephone: (415) 571-0582
Facsimile: (650) 952-0409
4 | scottflaxman@yahoo.com

5 | Attorney for Plaintiff

6

7

8

9 | IN THE UNITED STATES DISTRICT COURT

10 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 | Case No.:

C 07 5433

12 | COMPLAINT FOR VIOLATION OF
FEDERAL REAL ESTATE SETTTLEMENT
13 | PROCEDURES ACT

14 | **DEMAND FOR JURY TRIAL**

15 |

16 | ALI BAALOUACH,

17 | Plaintiff,

18 | vs.

19 | MEHDI NAFAI, DORIS ALICIA CORDOVA,

20 | SUMMIT MORTGAGE,

21 | REALTY MORTGAGE, LLC,

22 | Doe 1 through Doe 10,

23 |

24 | Defendants

25 |



**PRELIMINARY STATEMENT**

1.  This Complaint is filed and these proceedings are instituted under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), seeking to recover actual damages, treble damages, and court costs, by reason of Defendants' violations of RESPA and Regulation X, 24 C.F.R. § 3500.1 et seq. ("Regulation X"). This Complaint is also brought to raise additional claims against Defendants for breach of fiduciary duty and California Statutory, 'Deceit.' This Complaint seeks actual damages and punitive damages for those claims as well.

**JURISDICTION AND VENUE**

2.  Personal jurisdiction over Defendants is proper before this Court.

3.  Counts I and II of this action arise under and are brought pursuant to the Federal Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. §2601 et seq. (hereinafter "RESPA"); thus, federal subject matter jurisdiction is properly founded upon 28 U.S.C. § 1331.

4.  This Court has supplemental jurisdiction over the pendent state claims, set out in Counts III and IV pursuant to 28 U.S.C. § 1367.

5. Venue over Defendants is proper before this Court pursuant to 28 U.S.C. §1391(b)(2) and 12 U.S.C. § 2614.

## STATUTORY FRAMEWORK OF RESPA

6. The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") was enacted on December 22nd, 1974.

7. Congress noted that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

8. One purpose of RESPA is "to effect certain changes in the settlement process for residential real estate that will result ... in the elimination of kickbacks or referral fees." 12 U.S.C. § 2601(b).

9. RESPA applies to "federally related mortgage loans," which is defined at 12 U.S.C. § 2602(1). RESPA initially applied only to certain first liens on residential real property. On October 28, 1992, the law was amended to cover subordinate liens and loans used to prepay or pay off an existing loan secured by the same property. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

10. RESPA prohibits kickbacks and referral fees: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or

understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

11. RESPA prohibits unearned fees: "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

12. RESPA requires that the lender provide to the borrower a settlement statement which shall "conspicuously and clearly itemize all charges imposed upon the borrower ... in connection with the settlement." 12 U.S.C. § 2603(a).

13. RESPA requires that the lender and mortgage broker provide to the borrower "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement." 12 U.S.C. § 2604(c); 24 C.F.R. § 3500.7.

14. The term "settlement services" includes "any service provided in connection with a real estate settlement including, but not limited to, ...the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)." 12 U.S.C. § 2602(3); 24 C.F.R. § 3500.2.

1

2                                      **FACTS**

3

4      15. The Plaintiff, Ali Baalouach, an individual, hereinafter ("Mr. Baalouach") is a 30

5          year-old resident alien, from Morocco. Mr. Baalouach is the owner of real property

           located at 68 Cayuga Avenue, San Francisco, California 94112, ("Property") where he

6          also resides and his profession is butcher.

7

8

9      16. Mr. Baalouach speaks Moroccan "Berber" as his first language and Arabic as his

10         second language.  Mr. Baalouach speaks limited English and can read almost no

           English.

11

12

13     17. Upon information and belief, Defendant DORIS ALICIA CORDOVA, an individual,

14         is a California, Department of Real Estate licensed real estate broker and the

15         responsible broker and corporate officer of Defendant SUMMIT MORTGAGE.

16

17

18     18. Upon information and belief Defendant DORIS ALICIA CORDOVA is also known as

           DORA CORDOVA and DORA ALICIA CORDOVA.

19

20

21     19. Upon information and belief Defendant DORIS ALICIA CORDOVA legally changed

22         her first name from DORA to DORIS.

23

24

25

20. Upon information and belief Defendant SUMMIT MORTGAGE is a mortgage brokerage corporation licensed by the California Department of Real Estate with an address at: 1220 Oakland Boulevard, Suite #200, Walnut Creek, California 94596.

21. Upon information and belief, Defendant REALTY MORTGAGE, LLC is a home loan lending company with an office located at 2901 Douglas Blvd., Suite #205, Roseville, California 95661.

22. Upon information and belief, at all times material to this action, Defendants DORIS ALICIA CORDOVA, SUMMIT MORTGAGE, REALTY MORTGAGE, LLC and Doe 1 through Doe 10 made residential loans, including "federally related loans" as that phrase is defined by RESPA.

23. Mr. Baalouach does not know the true names of the Defendants sued as Doe 1 through Doe 10.

24. Upon information and belief, at all times material to this action, Defendant SUMMIT MORTGAGE and Defendant DORIS ALICIA CORDOVA conducted business as a "mortgage broker" as that phrase is defined by Regulation X at 24 C.F.R. § 3500.2. As such, Defendant SUMMIT MORTGAGE and Defendant DORIS ALICIA CORDOVA, provided real estate "settlement services" as that phrase is defined by RESPA at 12 U.S.C. § 2602(3) and at 24 C.F.R. § 3500.2.

25. On or about September, 2006 Mr. Baalouach discussed the possibility of refinancing the Property with Defendant MEHDI NAFAI, an individual ("Defendant NAFAI").

26. All conversations between Mr. Baalouach and Defendant NAFAI regarding the refinancing of the Property were conducted in Arabic.

27. Upon information and belief, at all times relevant herein, Defendant NAFAI was acting as agent and/or employee of Defendant SUMMIT MORTGAGE and Defendant DORIS ALICIA CORDOVA.

28. Mr. Baalouach's only information and communication, prior to the date of loan closing, regarding the refinancing of the Property came from information supplied by Defendant NAFAI either in person or by telephone. Defendant NAFAI supplied all information concerning refinancing the Property to Mr. Baalouach exclusively in Arabic.

29. Defendant NAFAI agreed to serve as Mr. Baalouach's agent and to provide him with mortgage brokerage services in connection with Mr. Baalouach's desire to refinance the existing loans on the Property. In fact, Defendant NAFAI represented to Mr. Baalouach that Defendant NAFAI and Defendant NAFAI's company, Defendant SUMMIT MORTGAGE would assist Mr. Baalouach in obtaining a good loan at a low interest rate.

30. Defendant NAFAI represented to Mr. Baalouach that the total fee Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant SUMMIT MORTGAGE would receive for the mortgage brokerage services in connection with the refinance of the Property would not exceed a total of $3,500.00 (Three thousand five hundred dollars).

31. Defendant NAFAI represented to Mr. Baalouach that the total fee Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant SUMMIT MORTGAGE would receive for the mortgage brokerage services in connection with the refinance of the Property would be paid entirely by the lender and that Mr. Baalouach would NOT bear any of the cost of the fee.

32. Pursuant to 12 U.S.C. §§ 2604 and 2607, Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI were obligated to disclose fully all costs, expenses, and fees from others, and not to accept any kickbacks from others, associated with the "federally related mortgage loan" and Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI'S provision of mortgage brokerage services.

33. Defendant NAFAI provided to Mr. Baalouach and Defendants DORIS ALICIA CORDOVA, SUMMIT MORTGAGE, REALTY MORTGAGE, LLC and Doe 1 through Doe 10, loan application information and paperwork necessary to secure a "federally related mortgage loan."

34. Upon information and belief, the existing first loan on the Property was secured by a Deed of Trust with EMC Corporation as the beneficiary. The existing second loan on the Property was secured by a Deed of Trust with Greenpoint Mortgage as the beneficiary.

35. Upon information and belief the loans supplied for the refinance were brokered by Defendant SUMMIT MORTGAGE and Defendant DORIS ALICIA CORDOVA and funded by Defendant REALTY MORTGAGE, LLC. Funds from the refinance were paid out to EMC Corporation in satisfaction of the First Trust Deed secured by the Property in the amount of $687,315.53. Funds were paid out to Greenpoint Mortgage in satisfaction of the Second Trust Deed secured by the Property in the amount of $85,372.48.

36. On or about October 26th, 2006 Defendant NAFAI, Defendant DORIS ALICIA CORDOVA, SUMMIT MORTGAGE, REALTY MORTGAGE, LLC and Doe 1 through Doe 10 conducted a loan closing to consummate its residential loan to Mr. Baalouach, such loan being a "federally related mortgage loan" as defined by RESPA at 12 U.S.C. § 2602(1) and at 24 C.F.R. § 3500.2.

37. Upon information and belief, the loan closing was conducted at 3000 Clayton Road, Concord, California 94519.

38. The proceeds of the two, new loans were to refinance the two, existing deeds of trust secured by the Property and for personal, family or household purposes.

39. The two loans were secured against title to Mr. Baalouach's principal dwelling, the Property, by two Separate Deeds of Trust recorded with the San Francisco Assessor-Recorder. The First Deed of Trust is recorded as DOC-2006-I278024-00, Acct 4-Old Republic Title Company, Thursday, November 2nd, 2006, Reel J259 Image 0160. The Second Deed of Trust is recorded with the San Francisco Assessor-Recorder, as DOC-2006-I278025-00, Acct 4-Old Republic Title Company, Thursday, November 2nd, 2006, Reel J259 Image 0161.

40. On or about  November 1, 2006, Mr. Baalouach received a "HUD-1" Settlement Statement ("Settlement Statement"), dated November 1, 2006.

41. A true and accurate copy of the "Settlement Statement" is attached to this Complaint as Exhibit A, and by this reference is incorporated herein [*not reprinted herein*].

42. Among the various fees charged in connection with Mr. Baalouach's loan included an "Appraisal Fee" of $350, "Tax Service Fee" of  $65, "Underwriting Fee" of $775, a "Flood Certification Fee" of $18, a "Wire Transfer Fee" of $25, an "Appraisal Review" of $550, an "Underwriting Fee-2nd Ln" of $200, a "Broker Admin Fee-2nd Ln" of $550, a "Processing Fee-2nd Ln" of $1,025,  a "Flood Certification Fee-2n [sic] Ln" of  $18, a "Wire Fee-2nd Ln" of $25, "Recording Fees" of $123

43. Furthermore, the Settlement Statement provides on line 811 as follows: "REALTY MORTGAGE, LLC SHALL PAY A YIELD SPREAD PREMIUM OF $18,281.25 TO SUMMIT MORTGAGE."

44. Defendant REALTY MORTGAGE, LLC in fact paid this fee as a kickback in connection with Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant SUMMIT MORTGAGE Company's referral of Mr. Baalouach to Defendant REALTY MORTGAGE, LLC for the purpose of making a "federally related mortgage loan" to Mr. Baalouach.

45. Upon information and belief, Defendant REALTY MORTGAGE, LLC'S payment of this steering fee increased Mr. Baalouach's settlement costs. Defendant REALTY MORTGAGE, LLC arranged with Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI to charge Mr. Baalouach a higher interest rate than REALTY MORTGAGE, LLC had originally approved for Mr. Baalouach as this was the way of providing the funds to pay the kickback to Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI.

46. Therefore, this fee for steering was paid indirectly by Mr. Baalouach through a higher interest rate than that for which he was otherwise qualified and for inferior loan terms than that which Mr. Baalouach could have otherwise received.

47. Defendant REALTY MORTGAGE, LLC paid this fee or kickback pursuant to an agreement or understanding that business incident to or a part of a real estate

"settlement service" involving a "federally related mortgage loan" would be referred by Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI to Defendant REALTY MORTGAGE, LLC.

48. At all times relevant herein, Mr. Baalouach had no understanding and received no explanation of the fact that Defendant REALTY MORTGAGE, LLC paid this "yield spread premium" fee to Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or Defendant NAFAI as a kickback for Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant SUMMIT MORTGAGE steering Mr. Baalouach to REALTY MORTGAGE, LLC for a higher-interest rate loan.

49. At all times relevant herein, Mr. Baalouach had no understanding and received no explanation of the fact that this "yield spread premium" fee was paid indirectly by Mr. Baalouach through a higher interest rate than he was otherwise qualified for and than Defendant REALTY MORTGAGE, LLC would have otherwise approved for him.

50. Neither Defendant REALTY MORTGAGE, LLC, Defendant NAFAI, Defendant DORIS ALICIA CORDOVA nor Defendant SUMMIT MORTGAGE disclosed to Mr. Baalouach that REALTY MORTGAGE, LLC'S payment of this "yield spread premium" fee to Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or Defendant NAFAI constituted a kickback or referral fee at or prior to the time that Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant SUMMIT MORTGAGE made the referral to REALTY MORTGAGE, LLC in connection with REALTY MORTGAGE, LLC making a "federally related

mortgage loan" to Mr. Baalouach.    Instead, the fee appeared on the Settlement Statement listed solely as "yield spread premium" without prior, contemporaneous or future explanation in Arabic (or in any language) as to its meaning.

51. Mr. Baalouach was not advised in a manner that he was reasonably capable of understanding that there was a pre-payment penalty on the new loans.

52. Mr. Baalouach was not advised in a manner that he was reasonably capable of understanding that the First Trust Deed had a negative amortization component.

53. Mr. Baalouach was not advised in a manner that he was reasonably capable of understanding that if Mr. Baalouach made the minimum loan payment that the loan balance would actually grow larger rather than smaller over time.

## COUNT I

### RESPA VIOLATIONS

### (AGAINST REALTY MORTGAGE, LLC)

54. All paragraphs of this Complaint are incorporated herein as if fully restated.

1

55. Based on the foregoing facts, REALTY MORTGAGE, LLC violated RESPA with
    respect to Mr. Baalouach by:

56. giving or paying fees, kickbacks or other things of value to Defendant SUMMIT
    MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or Defendant NAFAI
    pursuant to an agreement or understanding that business incident to or a part of a real
    estate settlement service involving federally related mortgage loans would be referred
    by Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant
    SUMMIT MORTGAGE to Defendant REALTY MORTGAGE, LLC in violation of
    12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(b); and

57. giving or accepting a portion, split, or percentage of charges made or received for the
    rendering of a real estate settlement service in connection with a transaction involving
    a federally related mortgage loan other than for services actually performed, in
    violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

58. Pursuant to 12 U.S.C. § 2607(d), Mr. Baalouach is entitled to recover, and hereby
    seeks to collect, from Defendant REALTY MORTGAGE, LLC an amount equal to
    three times the amount of any and all charges for "settlement services" paid directly or
    indirectly by Mr. Baalouach, as well as actual damages, court costs, and any and all
    other amounts or damages allowed by RESPA.

## COUNT II

## RESPA VIOLATIONS

### (AGAINST SUMMIT MORTGAGE, DORIS ALICIA CORDOVA AND MEHDI NAFAI)

59. All paragraphs of this Complaint are incorporated herein as if fully restated.

60. Based on the foregoing facts, Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI violated RESPA with respect to Mr. Baalouach by:

61. accepting fees, kickbacks or other things of value from Defendant REALTY MORTGAGE, LLC pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred to Defendant REALTY MORTGAGE, LLC in violation of 12 U.S.C. § 2607(1) and 24 C.F.R. § 3500.14(b); and

62. giving or accepting a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c).

63. Pursuant to 12 U.S.C. § 2607(d), Mr. Baalouach is entitled to recover, and hereby seeks to collect, from Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and from Defendant SUMMIT MORTGAGE an amount equal to three times the amount of

any and all charges for "settlement services" paid directly or indirectly by Mr. Baalouach, as well as actual damages, court costs, and any and all other amounts or damages allowed by RESPA.

## COUNT III

## BREACH OF FIDUCIARY DUTY

## (AGAINST SUMMIT MORTGAGE, DORIS ALICIA CORDOVA AND MEHDI NAFAI)

64. All paragraphs of this Complaint are incorporated herein as if fully restated.

65. Upon information and belief, Defendant SUMMIT MORTGAGE and Defendant DORIS ALICIA CORDOVA, collectively were the employer of or contracted with Defendant NAFAI and had as their agent Defendant NAFAI, who solicited and intentionally induced the trust, confidence and reliance of Mr. Baalouach as home loan counselor and guide for Mr. Baalouach.

Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant SUMMIT MORTGAGE's role as mortgage broker for Mr. Baalouach created fiduciary duties owed by Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant SUMMIT MORTGAGE to Mr. Baalouach. These fiduciary duties were breached by

the conduct set forth above, that was done for the sake of self-dealing and unjustified

profits taken by Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and

Defendant SUMMIT MORTGAGE through the receipt of the "yield spread premium

fee."

66. Mr. Baalouach is entitled to remedies that include imposition of a constructive trust

upon the proceeds of the transaction as were paid to Defendant SUMMIT

MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or Defendant NAFAI, an

order requiring disgorgement of all proceeds paid to Defendant SUMMIT

MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or Defendant NAFAI,

punitive damages and to other legal and equitable remedies to be imposed jointly and

severally upon Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA

CORDOVA and Defendant NAFAI.

## COUNT IV

## DECEIT AS DEFINED IN CALIFORNIA CIVIL CODE §§1709-1710

## (AGAINST SUMMIT MORTGAGE, DORIS ALICIA CORDOVA AND MEHDI NAFAI)

67. All paragraphs of this Complaint are incorporated herein as if fully restated.

68. Upon information and belief, Defendant SUMMIT MORTGAGE, Defendant DORIS
ALICIA CORDOVA and Defendant NAFAI, made misrepresentations to Mr.
Baalouach, as set forth above, including but not limited to statements that Defendant
SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant
NAFAI would act in Mr. Baalouach's best interest to obtain a loan which would be to
Mr. Baalouach's benefit and to obtain a loan with the best possible terms for Mr.
Baalouach. In fact, Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA
CORDOVA and Defendant NAFAI did not obtain a loan which was to Mr.
Baalouach's benefit and in fact induced Mr. Baalouach to accept a loan on worse terms
and with a higher interest rate than he could have otherwise obtained so that Defendant
SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant
NAFAI could receive a "yield spread premium" kickback.

69. Defendant NAFAI, Defendant DORIS ALICIA CORDOVA and Defendant SUMMIT
MORTGAGE misrepresented the amount that Defendant NAFAI, Defendant DORIS

ALICIA CORDOVA and Defendant SUMMIT MORTGAGE were charging Mr.
Baalouach for their services.

70. Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or
Defendant NAFAI suppressed the fact that the "yield spread premium" was a kickback
payment and that ultimately Mr. Baalouach would end up paying for the improper
kick-back through higher interest rates, other loan fees and generally less favorable
loan terms.  Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA
CORDOVA and Defendant NAFAI were bound to disclose the nature of the kickback
and the consequences to Mr. Baalouach but failed to do so.

71. Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and
Defendant NAFAI stated to Mr. Baalouach that the cost of the home loan brokerage
service they provided to Mr. Baalouach would not exceed $3,500 (three thousand five
hundred dollars) and that the entire cost burden of the fee was to be absorbed by the
lender and only the lender.

72. In fact, the amount of the fee paid to Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or Defendant NAFAI was $18,281.25 and, in fact, the fee paid to Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or Defendant NAFAI was indirectly paid by Mr. Baalouach through higher interest rates on his loans and generally worse loan terms than Mr. Baalouach could have otherwise received.

73. Defendant SUMMIT MORTGAGE's, Defendant DORIS ALICIA CORDOVA's and Defendant NAFAI's misleading acts and statements regarding Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI's products and services in fact did mislead Mr. Baalouach and proximately damaged Mr. Baalouach by causing him to pay more for products (his home loans) and services (mortgage brokerage) than the amount originally purported to be the price of these products and services.

74. California Civil Code § 1709 provides that:

One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers.

Deceit, within the meaning of CC § 1709, can take any of these forms (CC§1710):

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

4. A promise, made without any intention of performing it.

75. Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI knew that their assertion regarding their fee and who would truly bear the cost of the fee was false and Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI had no reasonable ground for believing their assertion regarding the fee to be true.

76. Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI knew that their assertion that they would procure the best loan on the best terms for Mr. Baalouach was false and they had no reasonable ground for believing this assertion to be true as they accepted payment for the "yield spread premium" which was a kick-back from the lender, Defendant REALTY MORTGAGE, LLC to Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and/or Defendant NAFAI and in exchange for the Defendants inducing Mr. Baalouach to contract to accept loans on worse terms than he could have possibly otherwise have gotten.

77. Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI knew that their assertion that their fee would not exceed $3,500 and all of the cost of the fee would be placed on the lender and only the lender was false and they had no reasonable ground for believing this assertion to be true as they accepted payment for the "yield spread premium" which was a kick-back from the lender to Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI in the amount of $18,281.25 and that the fee was actually going to be indirectly paid by Mr. Baalouach in the form of a higher interest rate and generally inferior loan terms than he could have otherwise received.

78. Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI knew that Mr. Baalouach did NOT understand the phrase, "yield spread premium" on the Settlement Statement and therefore were bound to disclose additional, explanatory information to Mr. Baalouach and were bound to use terminology and language understandable to Mr. Baalouach as the "yield spread premium" payment had a dramatic, material affect on the loans Mr. Baalouach received, causing him to pay a higher interest rate and receive loan terms inferior to those he otherwise could have had, if the Defendants had disclosed the additional, explanatory information they were bound to disclose.

79. Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI promised that they would procure the best loan on the best terms for Mr. Baalouach. The Defendants made this promise with no intention of performing it as they knew they would receive a kick-back "yield spread premium" from the lender in exchange for inducing Mr. Baalouach to contract to accept loans with higher interest rates and on worse terms than Mr. Baalouach could have possibly otherwise have gotten.

80. The acts of Defendant SUMMIT MORTGAGE, Defendant DORIS ALICIA CORDOVA and Defendant NAFAI as set forth above constitute Deceit under Cal. CC §§1709-1710 thereby entitling Mr. Baalouach to his actual damages, including but not limited to: loans at the actual approval rates and loan terms at the actual approval rate rather than inflated rates and more oppressive terms.

## PRAYER FOR RELIEF

81. WHEREFORE, Mr. Baalouach requests judgment and relief as follows:

   a.    under Count I against REALTY MORTGAGE, LLC for treble damages and costs for RESPA violations;

b.   under Count II against SUMMIT MORTGAGE, DORIS ALICIA CORDOVA and MEHDI NAFAI, treble damages and costs for RESPA violations;

c.   under Count III against SUMMIT MORTGAGE, DORIS ALICIA CORDOVA and MEHDI NAFAI, actual damages, imposition of a constructive trust upon the proceeds of the transaction as were paid to SUMMIT MORTGAGE, DORIS ALICIA CORDOVA and/or MEHDI NAFAI, and an order requiring disgorgement of all proceeds paid to SUMMIT MORTGAGE, DORIS ALICIA CORDOVA and/or MEHDI NAFAI and to punitive damages for breach of fiduciary duty;

d.   under Count IV against SUMMIT MORTGAGE, DORIS ALICIA CORDOVA AND MEHDI NAFAI, actual damages for Deceit;

e.   such other relief to which Mr. Baalouach may be entitled, or as determined just and appropriate by this Court.

**DEMAND FOR JURY TRIAL**

Dated: October 23rd, 2007

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT A



A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB No. 2502-0265





# OLD REPUBLIC TITLE COMPANY

| B. TYPE OF LOAN | | | |
|---|---|---|---|
| 1. ☐FHA  2. ☐FmHA  3. ☒Conv. Unins. | 6. File Number<br>0111006084-JO | 7. Loan Number<br>7531026872 | 8. Mortgage Insurance<br>Case Number |
| 4. ☐ VA  5. ☐ Conv. Ins. | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower<br>Ali Baalouach<br>604 Geary Ave<br>San Francisco, CA 94102 | E. Name and Address of Seller | F. Name and Address of Lender<br>Realty Mortgage, LLC<br>2901 Douglas Boulevard Suite 205<br>Roseville, CA 95661 |
|---|---|---|

| G. Property Location<br>68 Cayuga Ave<br>San Francisco, CA 94101    (See Attachment) | H. Settlement Agent<br>Old Republic Title Company | |
|---|---|---|
| | Place of Settlement<br>3000 Clayton Road<br>Concord, CA 94519 | I. Settlement Date<br>11/1/2005 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line1400) | 5,854.04 | 403. | |
| 104. PAYOFF EXISTING LOAN | 687,315.53 | 404. | |
| 105. PAYOFF EXISTING LOAN | 85,372.48 | 405. | |
| R.E. Tax Payment (Lot 21 Block 6752) | 4,762.88 | | |
| | | | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 783,304.93 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan 1st | 731,250.00 | 502. Settlement charges to seller (line 1400) | |
| Principal amount of new loan 2nd | 146,250.00 | 503. Existing loan(s) taken subject to | |
| | | 504. | |
| | | 505. | |
| | | 506. | |
| | | 507. | |
| | | 508. | |
| | | 509. | |
| | | | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessment          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 877,500.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 783,304.93 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line220) | (877,500.00) | 602. Less reductions in amount due seller (line 520) | ( ) |
| 303. CASH ☐ FROM ☒ TO BORROWER | 94,195.07 | 603. CASH ☐ TO ☐ FROM SELLER | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: ● HUD must develop a Special Information Booklet to help persons

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the

Escrow No.: 0111006084-JO 

| **L. SETTLEMENT CHARGES** | **Paid From Borrower's Funds At Settlement** | **Paid From Seller's Funds At Settlement** |
|---|---|---|
| 700. Total sales/broker's commission based on price $          @          %= | | |
| Division of commission (line 700) as follows: | | |
| 701. | | |
| 702. | | |
| 703. Commission disbursed at settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** See Attachment for Subordinate Financing Charges | 1,818.00 | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | 350.00 | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | 65.00 | |
| 808. Tax Service Fee | 775.00 | |
| 809. Underwriting Fee | 18.00 | |
| 810. Flood Certification Fee | | |
| 811. Realty Mortgage, LLC shall pay a yield spread premium of $18,281.25 to Summit Mortgage | 25.00 | |
| 812. Wire Transfer Fee | 550.00 | |
| 813. Appraisal Review | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | 25.04 | |
| 901. Interest, 10/31/06 to 11/01/06, 1 days @ $25.04 | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| **1100. TITLE CHARGES** | 30.00 | |
| 1106. Notary Fees to Jay Oxending | | |
| 1108. Title insurance to | | |
| (includes above items numbers:) 1102, 1103, 1108, Endorsements and Additional Title Fees, if any | | |
| 1109. | | |
| 1111. Integrated Refinance Insurance and Settlement Service | 2,075.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | 123.00 | |
| 1201. Recording fees: Deed $          Mortgage $ 123.00          Releases $ | | |
| 1202. City/county tax/stamps:          Deed $          Mortgage $ | | |
| 1203. State tax/stamps:          Deed $          Mortgage $ | | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. | | |
| 1302. | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |

Escrow No.: 0111006084-JO
Loan No.: 7531026872

Attachment to HUD Statement

PROPERTY LOCATION

198 Rosseau
San Francisco, CA 94101

===== Continuation from Page1 =====

BUYER ADJUSTMENTS                                           SELLER ADJUSTMENTS

AMOUNTS PAID BY OR IN BEHALF OF BORROWER

DEPOSIT OR EARNEST MONEY — LINE 201

PRINCIPAL AMOUNT OF NEW LOAN(S) — LINE 202

Realty Mortgage, LLC
2901 Douglas Boulevard Suite 205
Roseville, CA 95661
Loan No.: 7531026872
Position: 1
Principal amount                              731,250.00

Realty Mortgage LLC
2901 Douglas Boulevard Suite 205
Roseville, CA 95661
Loan No.: 7531026873
Position: 2
Principal amount                              146,250.00

Escrow No.: 0111006084-JO

Attachment to HUD Statement

Lender     Realty Mortgage LLC
           2901 Douglas Boulevard Suite 205
           Roseville, CA 95661

Loan No.   7531026873

Subordinate Financing Charges

| Item | Borrower | Seller |
|------|----------|--------|
| Wire Fee – 2nd Ln | 25.00 | |
| Underwriting Fee – 2nd Ln | 200.00 | |
| Flood Certification – 2n Ln | 18.00 | |
| Broker Admin Fee – 2nd Ln | 550.00 | |
| Processing Fee – 2nd Ln | 1,025.00 | |
| Total | 1,818.00 | |