SCOTT A. FLAXMAN (SBN 241285)
SCOTT A. FLAXMAN, ATTORNEY AT LAW
21 Buena Vista Road
South San Francisco, Ca 94080
Telephone: (415) 571-0582
Facsimile:  (650) 952-0409

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI BAALOUACH, | ) |
| | ) |
| | ) |
| Plaintiff | ) |
| | ) Case No.: 3:07-cv-5433 |
| vs. | ) |
| | ) |
| MEHDI NAFAI, | ) |
| | ) **PLAINTIFF'S REQUEST FOR COURT** |
| DORIS ALICIA CORDOVA, | ) **JUDGMENT** |
| | ) |
| SUMMIT MORTGAGE, | ) |
| | ) |
| REALTY MORTGAGE, LLC, | ) |
| | ) |
| Doe 1 through Doe 10, | ) |
| | ) |
| | ) |
| | ) |
| Defendant | ) |

The Plaintiff, Ali Baalouach, by and through his counsel, Scott A. Flaxman ("Plaintiff"),

pursuant to Rule 55(b) of the Federal Rules of Civil Procedure and California Code of Civil

Procedure §585, request the Court to enter Default Judgment against the defendants: Doris Alicia

Cordova  a.k.a. Dora Cordova and Summit Mortgage, a California Corporation, individually.

The Court should enter a Default Judgment against these Defendants for the following reasons:

## SUMMARY OF CASE

### PARTIES

**Plaintiff Ali Baalouach:**

The Plaintiff, Ali Baalouach, an individual, ("Mr. Baalouach") is a 30 year old resident alien from Morocco. Mr. Baalouach is the owner of real property located at 68 Cayuga Avenue, San Francisco, California 94112, ("Property"), where he also resides. Mr. Baalouach's profession is butcher.

**Defendant Mehdi Nafai:**

Defendant Mehdi Nafai ("Defendant Nafai") is an individual residing in the state of California.

**Defendant Summit Mortgage Corporation:**

("Defendant Summit Mortgage") is a California Corporation.

**Defendant Doris Alicia Cordova**

Defendant Doris Alicia Cordova is an individual residing in the State of California and Doris Alicia Cordova is also known as Dora Alicia Cordova. Upon information and belief, Dora Alicia Cordova had her name legally changed to Doris Alicia Cordova. ("Defendant Doris Alicia Cordova").

Defendant Doris Alicia Cordova is a California, Department of Real Estate licensed real estate broker and is the responsible broker and corporate officer of Defendant Summit Mortgage.

**Defendant Realty Mortgage, LLC**

Defendant Realty Mortgage Corporation, LLC, is a Mississippi Corporation ("Defendant Realty Mortgage").

**NATURE OF PLAINTIFF'S CLAIMS**

**PRELIMINARY STATEMENT**

1. This action was brought and these proceedings were instituted under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), seeking to recover actual damages, treble damages, and court costs, by reason of Defendants' violations of RESPA and Regulation X, 24 C.F.R. § 3500.1 et seq. ("Regulation X").  This action was also brought to raise additional claims against Defendants for breach of fiduciary duty and California Statutory, 'Deceit.'  Actual damages and punitive damages are sought for those claims as well.

**JURISDICTION AND VENUE**

2. Personal jurisdiction over Defendants is proper before this Court.

3. Count number I of this action arises under and is brought pursuant to the Federal Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. §2601 et seq. (hereinafter "RESPA"); thus, federal subject matter jurisdiction is properly founded upon 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over the pendent state claims, set out in Counts II and III pursuant to 28 U.S.C. § 1367.

5. Venue over Defendants is proper before this Court pursuant to 28 U.S.C. §1391(b)(2) and 12 U.S.C. § 2614.

**STATUTORY FRAMEWORK OF RESPA**

6. The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA") was enacted on December 22nd, 1974.

7. Congress noted that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

8. One purpose of RESPA is "to effect certain changes in the settlement process for residential real estate that will result ... in the elimination of kickbacks or referral fees." 12 U.S.C. § 2601(b).

9. RESPA applies to "federally related mortgage loans," which is defined at 12 U.S.C. § 2602(1). RESPA initially applied only to certain first liens on residential real property. On October 28, 1992, the law was amended to cover subordinate liens and loans used to prepay or pay off an existing loan secured by the same property. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

10. RESPA prohibits kickbacks and referral fees: "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate

settlement service involving a federally related mortgage loan shall be referred to any person."  12 U.S.C. § 2607(a).

11. RESPA prohibits unearned fees:  "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."  12 U.S.C. § 2607(b).

12. RESPA requires that the lender provide to the borrower a settlement statement which shall "conspicuously and clearly itemize all charges imposed upon the borrower ... in connection with the settlement."  12 U.S.C. § 2603(a).

13. RESPA requires that the lender and mortgage broker provide to the borrower "a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement."  12 U.S.C. § 2604(c); 24 C.F.R. § 3500.7.

14. The term "settlement services" includes "any service provided in connection with a real estate settlement including, but not limited to, ...the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans)."  12 U.S.C. § 2602(3); 24 C.F.R. § 3500.2.

**FACTS**

15. Mr. Baalouach speaks Moroccan "Berber" as his first language and Arabic as his second language.  Mr. Baalouach speaks limited English and can read almost no English.

16. At all times material to this action, Defendants Doris Alicia Cordova and Defendant Summit Mortgage conducted business which included finding borrowers who wanted residential loans, including "federally related loans" as that phrase is defined by RESPA and referring those borrowers to lenders.

17. Defendant Doris Alicia Cordova and Defendant Summit Mortgage conducted business as a "mortgage broker" as that phrase is defined by Regulation X at 24 C.F.R. § 3500.2.  As such, Defendant Doris Alicia Cordova and Defendant Summit Mortgage, provided real estate "settlement services" as that phrase is defined by RESPA at 12 U.S.C. § 2602(3) and at 24 C.F.R. § 3500.2.

18. On or about September, 2006 Mr. Baalouach discussed the possibility of refinancing the Property with Defendant Nafai.

19. All conversations between Mr. Baalouach and Defendant Nafai regarding the refinancing of the Property were conducted in Arabic.

20. Defendant NAFAI was acting as agent and/or employee of Defendant Summit Mortgage and Defendant Doris Alicia Cordova.

21. Mr. Baalouach's only information and communication, prior to the date of loan closing, regarding the refinancing of the Property came from information supplied by Defendant Nafai either in person or by telephone.  Defendant Nafai supplied all information concerning refinancing the Property to Mr. Baalouach exclusively in Arabic.

22. Defendant Nafai agreed to serve as Mr. Baalouach's agent and to provide him with mortgage brokerage services in connection with Mr. Baalouach's desire to refinance the existing loans on the Property.  In fact, Defendant Nafai represented to Mr. Baalouach that Defendant Nafai, Defendant Doris Alicia Cordova and Defendant Summit Mortgage, would assist Mr. Baalouach in obtaining a good loan at a low interest rate.

23. Defendant Nafai represented to Mr. Baalouach that the total fee Defendant Nafai, Defendant Doris Alicia Cordova and Defendant Summit Mortgage would receive for the mortgage brokerage services in connection with the refinance of the Property would not exceed a total of $3,500.00 (three thousand five hundred dollars).

24. Defendant Nafai represented to Mr. Baalouach that the total fee Defendant Nafai, Defendant Doris Alicia Cordova and Defendant Summit Mortgage would receive for the mortgage brokerage services in connection with the refinance of the Property

would be paid entirely by the lender and that Mr. Baalouach would NOT bear any of the cost of the fee.

25. Pursuant to 12 U.S.C. §§ 2604 and 2607, Defendant Summit Mortgage, Defendant Doris Alicia Cordova and Defendant Nafai were obligated to fully disclose all costs, expenses, and fees from others, and not to accept any kickbacks or referral fees from others, associated with the "federally related mortgage loan" and Defendant Summit Mortgage, Defendant Doris Alicia Cordova and Defendant Nafai's provision of mortgage brokerage services.

26. Defendant Nafai provided to Mr. Baalouach and Defendants Doris Alicia Cordova and Summit Mortgage Company loan application information and paperwork necessary to secure a "federally related mortgage loan."

27. The existing first loan on the Property was secured by a Deed of Trust with EMC Corporation as the beneficiary. The existing second loan on the Property was secured by a Deed of Trust with Greenpoint Mortgage as the beneficiary.

28. The loans supplied for the refinance were brokered by Defendant Summit Mortgage and Defendant Doris Alicia Cordova and funded by Defendant Realty Mortgage. Funds from the refinance were paid out to EMC Corporation in satisfaction of the First Trust Deed secured by the Property in the amount of $687,315.53. Funds were paid out to Greenpoint Mortgage in satisfaction of the Second Trust Deed secured by the Property in the amount of $85,372.48.

29. On or about October 26th, 2006 Defendant Nafai, Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Realty Mortgage conducted a loan closing to consummate its residential loan to Mr. Baalouach, such loan being a "federally related mortgage loan" as defined by RESPA at 12 U.S.C. § 2602(1) and at 24 C.F.R. § 3500.2.

30. The loan closing was conducted at 3000 Clayton Road, Concord, California 94519.

31. The proceeds of the two, new loans were to refinance the two, existing deeds of trust secured by the Property and for personal, family or household purposes.

32. The two loans were secured against title to Mr. Baalouach's principal dwelling, the Property, by two Separate Deeds of Trust recorded with the San Francisco Assessor-Recorder.  The First Deed of Trust  is recorded as DOC-2006-I278024-00, Acct 4-Old Republic Title Company, Thursday, November 2nd, 2006, Reel J259 Image 0160.  The Second Deed of Trust is recorded with the San Francisco Assessor-Recorder, as DOC-2006-I278025-00, Acct 4-Old Republic Title Company, Thursday, November 2nd, 2006, Reel J259 Image 0161.

33.  On or about  November 1, 2006, Mr. Baalouach received a "HUD-1" Settlement Statement ("Settlement Statement"), dated November 1, 2006.

34. A true and accurate copy of the "Settlement Statement" is attached to this Request as Exhibit A, and by this reference is incorporated herein [*not reprinted herein*].

35. Among the various fees charged in connection with Mr. Baalouach's loan included an "Appraisal Fee" of $350, "Tax Service Fee" of $65, "Underwriting Fee" of $775, a "Flood Certification Fee" of $18, a "Wire Transfer Fee" of $25, an "Appraisal Review" of $550, an "Underwriting Fee-2nd Ln" of $200, a "Broker Admin Fee-2nd Ln" of $550, a "Processing Fee-2nd Ln" of $1,025, a "Flood Certification Fee-2n [sic] Ln" of $18, a "Wire Fee-2nd Ln" of $25, "Recording Fees" of $123

36. Furthermore, the Settlement Statement provides on line 811 as follows: "REALTY MORTGAGE, LLC SHALL PAY A YIELD SPREAD PREMIUM OF $18,281.25 TO SUMMIT MORTGAGE."

37. Defendant Realty Mortgage in fact paid this fee to Defendant Doris Alicia Cordova and Defendant Summit Mortgage Company in exchange for those Defendants' referral of Mr. Baalouach to Defendant Realty Mortgage for the purpose of making a "federally related mortgage loan" to Mr. Baalouach.

38. Defendant Summit Mortgage Corporation and Defendant Doris Alicia Cordova's receipt of this steering fee increased Mr. Baalouach's settlement costs. Defendant Summit Mortgage and Defendant Doris Alicia Cordova arranged for Mr. Baalouach to receive a loan at a higher interest rate and with more oppressive loan terms, including a pre-payment penalty than Mr. Baalouach could have otherwise received so that

Defendant Doris Alicia Cordova and Defendant Summit Mortgage Corporation could receive the "yield spread premium" payment.

39. This fee for steering was paid indirectly by Mr. Baalouach through a higher interest rate, and inferior loan terms than that which Mr. Baalouach could have otherwise received.

40. Defendant Doris Alicia Cordova and Summit Mortgage Corporation received this fee pursuant to an agreement or understanding that business incident to or a part of a real estate "settlement service" involving a "federally related mortgage loan" would be referred by Defendant Doris Alicia Cordova and Summit Mortgage Corporation to Defendant Realty Mortgage.

41. At all times relevant herein, Mr. Baalouach had no understanding and received no explanation of the fact that Defendant Doris Alicia Cordova and Defendant Summit Mortgage received this "yield spread premium" fee as a payment for Defendant Doris Alicia Cordova and Defendant Summit Mortgage steering Mr. Baalouach into a loan with a higher interest rate and more onerous loan terms.

42. At all times relevant herein, Mr. Baalouach had no understanding and received no explanation of the fact that this "yield spread premium" fee was paid indirectly by Mr. Baalouach through a higher interest rate and more oppressive loan terms than were otherwise available to Mr. Baalouach.

43. Neither Defendant Doris Alicia Cordova,  Defendant Nafai, nor Defendant Summit Mortgage disclosed to Mr. Baalouach that the payment of this "yield spread premium" fee to Defendant Summit Mortgage, Defendant Doris Alicia Cordova and/or Defendant Nafai constituted a kickback or referral fee at or prior to the time that Defendant Nafai, Defendant Doris Alicia Cordova and Defendant Summit Mortgage made the referral to Defendant Realty Mortgage in connection with Defendant Realty Mortgage funding a "federally related mortgage loan."

44. Instead, the fee appeared on the Settlement Statement listed solely as "yield spread premium" without prior, contemporaneous or future explanation in Arabic (or in any language) as to its meaning.

45. Mr. Baalouach was not advised in a manner that he was reasonably capable of understanding that there was a pre-payment penalty on the new loans.

46. Mr. Baalouach was not advised in a manner that he was reasonably capable of understanding that the First Trust Deed had a negative amortization component.

47. Mr. Baalouach was not advised in a manner that he was reasonably capable of understanding that if Mr. Baalouach made the minimum loan payment that the loan balance would actually grow larger rather than smaller over time.

48. The Property is currently in default and a Trustee Sale is scheduled for February 19th, 2008.   As of  February 4, 2008 the outstanding loan balances on the two loans secured by the Property was approximately $948,160.28.

49. Mr. Baalouach is currently attempting to sell the Property and a contract for sale, dated, August 9th, 2007 has been entered with a buyer for a sales price of $860,000. The current loan servicing company, Countrywide, has, twice since August 9th, 2007, stated that they were rejecting the sale and then reversed their decision and stated that they were reopening the sale and reviewing the terms.

50. On January 31, 2008, Countrywide stated that the prospect of the sale going through was good and that they would have an answer in 7 to 10 business days.

51. On or before February 19th, 2008 (the date the foreclosure by Trustee sale is scheduled to occur) the Property will have either been sold for $860,000 or the current holder of the Trust Deeds will have foreclosed on the Property. Regardless of whether the sale is consummated or the lender forecloses on the Property, either way, Mr. Baalouach will still have lost the same amount of money: $215,000. Mr. Baalouach therefore has incurred actual damages in the amount of $215,000 which he is entitled to recover from Defendant Doris Alicia Cordova and Defendant Summit Mortgage .

**COUNT I**
**RESPA VIOLATIONS**
**(AGAINST DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE)**

52. All paragraphs of this Request are incorporated herein as if fully restated.

53. Based on the foregoing facts, Defendant Doris Alicia Cordova and Defendant Summit Mortgage violated RESPA with respect to Mr. Baalouach by:

54. Accepting fees, kickbacks or other things of value from Defendant Realty Mortgage pursuant to an agreement or understanding that business incident to or part of a real

estate settlement service involving federally related mortgage loans would by referred to Defendant Realty Mortgage in violation of 12 U.S.C. §2607(1) and 24 C.F.R. §3500.14(b); and

55. Giving or accepting a portion, split or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. §2607(b) and 24 C.F.R. §3500.14(c).

56. Pursuant to 12 U.S.C. §2607(d), Mr. Baalouach is entitled to recover and hereby seeks to collect from Defendant Doris Alicia Cordova and Defendant Summit Mortgage (jointly and severally) and amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Mr. Baalouach, as well as actual damages, court costs, and any and all other amounts or damages allowed by RESPA.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**(AGAINST DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE)**

57. All paragraphs of this Request are incorporated herein as if fully restated.

58. Defendant Doris Alicia Cordova and Defendant Summit Mortgage collectively were the employer of or contracted with Defendant Nafai and had as their agent, Defendant Nafai, who solicited and intentionally induced the trust, confidence and reliance of Mr. Baalouach as home loan counselor and guide for Mr. Baalouach.

59. Defendant Nafai, Defendant Doris Alicia Cordova and Defendant Summit Mortgage's role as mortgage broker for Mr. Baalouach created fiduciary duties owed by Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai to Mr. Baalouach. The Defendants breached these duties by the conduct set forth above, that was done for the sake of self-dealing and unjustified profits taken by Defendant Doris Alicia Cordova, Defendant Nafai and Defendant Summit Mortgage through the receipt of the "yield spread premium fee."

60. Mr. Baalouach is entitled to remedies that include imposition of a constructive trust upon the proceeds of the transaction as were paid to Defendant Doris Alicia Cordova and Defendant Summit Mortgage, punitive damages and to other legal and equitable remedies to be imposed jointly and severally upon Defendant Doris Alicia Cordova and Defendant Summit Mortgage.

**COUNT III**
**DECEIT AS DEFINED IN CALIFORNIA CODE §§1709-1710**
**(AGAINST DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE)**

61. All paragraphs of this Request are incorporated herein as if fully restated.

62. Defendant Summit Mortgage, Defendant Doris Alicia Cordova and Defendant Nafai, made misrepresentations to Mr. Baalouach, as set forth above, including but not limited to statements that Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai would act in Mr. Baalouach's best interest to obtain a loan which would be to Mr. Baalouach's benefit and that they would work to secure a loan with the best possible interest rate and terms for Mr. Baalouach.  In fact, Defendant Doris Alicia Cordova, Defendant Nafai and Defendant Summit Mortgage did NOT obtain a loan which was to Mr. Baalouach's benefit, but rather induced Mr. Baalouach to accept a loan on worse terms and with a higher interest rate than he could have otherwise obtained so that Defendant Doris Alicia Cordova, Defendant Nafai and Defendant Summit Mortgage could receive a "yield spread premium" kickback.

63. Defendant Nafai, Defendant Doris Alicia Cordova and Defendant Summit Mortgage Company misrepresented the amount that Defendant Nafai, Defendant Doris Alicia Cordova and Defendant Summit Mortgage were charging for their services.

64. Defendant Doris Alicia Cordova, Defendant Nafai, Defendant Summit Mortgage Company suppressed the fact that the "yield spread premium" was a kickback payment and that Mr. Baalouach was actually paying for this improper fee through higher interest rates and more onerous loan fees and terms.  Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai were bound to disclose the nature of the kickback and the consequences to Mr. Baalouach but failed to do so.

65. Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai stated to Mr. Baalouach that the cost of the home loan brokerage service they were purporting to provide to Mr. Baalouach would not exceed $3,500.00 (three thousand five hundred dollars) and that the entire cost burden of the fee would be absorbed by the lender and the lender only.

66. The amount of the fee paid to Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai was $18,281.25, and the fee paid to Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai was paid by Mr. Baalouach through higher interest rates on his loans and generally worse loan terms than Mr. Baalouach could have otherwise received.

67. Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai's misleading acts and statements regarding these Defendants' products and services did

mislead Mr. Baalouach and proximately damaged Mr. Baalouach by causing him to pay more for products (his home loans) and services (mortgage brokerage) than the amount originally purported to be the price of these products and services.

68. California Civil Code §1709 ("CC §1709") provides that:

One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damages which he thereby suffers.

Deceit, within the meaning of CC §1709, can take any of these forms:
1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
3. The suppression of a fact, by one who is bound to disclose it, or who give information of other facts which are likely to mislead for want of communication of that fact; or
4. A promise made without any intention of performing it.  CC §1709.

69. Defendant Doris Alicia Cordova, Defendant Nafai and Defendant Summit Mortgage knew that their assertion regarding their fee and who would truly bear the cost of the kickback was false and Defendant Doris Alicia Cordova and Defendant Summit Mortgage had no reasonable grounds for believing their assertion regarding the fee to be true.

70.  Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai knew their assertion regarding their fee and who would truly bear the cost of the fee was false.  Defendant Doris Alicia Cordova, Defendant Nafai and Defendant Summit Mortgage had no reasonable grounds for believing their assertion regarding the fee to be true.

71.  Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai knew that their assertion that they would procure the best loan on the best terms for Mr. Baalouach was false and they had no reasonable grounds for believing the assertion to be true as they accepted payment for the "yield spread premium" which was a kick-back from the lender and in exchange for the Defendants inducing Mr. Baalouach to accept loans on worse terms than he could have possibly otherwise have gotten.

72. Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai knew that their assertion that their fee would not exceed $3,500.00 (three thousand five hundred dollars) and all of the cost of the fee would be placed on the lender and only the lender was false.  These Defendants had no reasonable grounds for believing this assertion to be true as they accepted payment for the "yield spread premium" which was a kick-back from the lender to Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai in the amount of $18,281.25 and that the fee

was actually going to be paid by Mr. Baalouach in the form of a higher interest and generally more onerous loan terms than he could have otherwise received.

73. Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai knew that Mr. Baalouach did not understand the phrase, "yield spread premium" written on the Settlement Statement and therefore were duty bound to disclose additional, explanatory information to Mr. Baalouach . These Defendants were duty bound to use terminology and language understandable to Mr. Baalouach as the "yield spread premium" payment had a dramatic, material affect on the loans Mr. Baalouach received, causing him to pay a higher interest rate and receive loan terms more onerous then he could have otherwise received had the Defendants disclosed the additional, explanatory information they were duty bound to disclose.

74. Defendant Doris Alicia Cordova, Defendant Summit Mortgage and Defendant Nafai promised that they would procure the best loan on the best terms for Mr. Baalouach. The Defendants made this promise with no intention of performing it as they knew they would receive a kick-back, "yield spread premium" from the lender in exchange for inducing Mr. Baalouach to contract to accept loans with higher interest rates and on worse terms than Mr. Baalouach could have possibly otherwise received.

75. The acts of Defendant Doris Alicia Cordova, Defendant Nafai and Defendant Summit Mortgage as set forth above constitute Deceit under CC §§1709-1710 thereby entitling Mr. Baalouach to his actual damages, including, but not limited to, loans at the actual approval rates and loan terms at the actual approval rates rather than inflated rates and more oppressive terms.

## <u>EVIDENCE SUPPORTING</u><br><u>PROPOSED JUDGMENT</u>

1. If called to testify at a hearing, the Plaintiff, Ali Baalouach can:

   a.   Through the aid of a translator, attest to the truth and the accuracy of the above facts.

   b.   Produce closing documents detailing Mr. Baalouach's $100,000 down payment for the Property when he originally purchased it.

   c    Produce bank and credit card statements detailing Mr. Baalouach's approximately $110,000.00 in loan payments since he purchased the Property.

   d.   Produce bank and credit card statements detailing Mr. Baalouach's approximately $30,000.00  in property tax payments he has made since he purchased the Property.

   e.   Produce bank and credit card statements detailing Mr. Baalouach's approximately $8,000.00 in payments for water used at the Property he has made since he purchased the Property.

f.  Produce bank and credit card statements detailing Mr. Baaouach's approximately $12,000.00 in insurance payments for the property since acquiring the Property.

g.  Records for $25,000.00 in repairs for the Property:
  i.   Home Depot: $18,000.00
  ii.  Lowe's:    $ 7,000.00

h.  A copy of the Purchase and Sale Agreement for the Property dated August 9th, 2007.

i.  A copy of the Notice of Trustee Sale with a stated sale date of August 19th, 2008.

2.  Defendant Mehdi Nafai would be called to testify to confirm the accuracy of facts as stated above and in the original Complaint as well.

3.       "Defendant Realty Mortgage LLC's Answer" (to Plaintiff's Complaint), dated January 11, 2008, confirms the following facts:

a. The Property is located at 68 Cayuga Avenue, San Francisco, California 94112.

b. 12 U.S.C. §2604 does require the disclosure of certain information; that 12 U.S.C. §2607 does prohibit "kickbacks," and that Defendant Summit Mortgage would have been obligated to comply with these provisions.

c. The refinanced loans were brokered by Defendant Summit Mortgage and Defendant Doris Alicia Cordova and funded by Defendant Realty Mortgage.

d. Funds from the refinance were paid out to EMC Corporation in satisfaction of the First Deed of Trust secured by the property in the amount of $687,315.53. Funds were paid out to Greenpoint Mortgage in satisfaction of the Second Trust Deed secured by the Property in the amount of $87,327.48.

e. The proceeds of the two, new loans were to refinance the two, existing deeds of trust secured by the Property and for personal, family or household purposes.

f. The two loans were secured against title to Mr. Baalouach's principal dwelling, the Property.

g. That the Settlement Statement provided in connection with the Loans states on line 811, "Realty Mortgage, LLC shall pay a yield spread premium of $18,281.25 to Summit Mortgage."

### MEMORANDAM OF COURT COSTS AND FEES INCURRED TO BRING THIS ACTION AGAINST DEFENDANT DORIS ALICIA CORDOVA AND DEFENDANT SUMMIT MORTGAGE CORPORATION

Courier Fees and United States Mailing Fees: $200.00
Civil Filing Fee: $350.00
Service of Process Fees: $300.00

Total Court costs, filing and mailing fees: $850.00

### REQUEST FOR COURT JUDGMENT SOUGHT ONLY AGAINST DEFENDANTS DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION

Plaintiff has reached a Settlement with Defendant Realty Mortgage and is close to finalizing a Settlement Agreement with Defendant Realty Mortgage.  Furthermore, Defendant Realty Mortgage has appeared in this matter, through their counsel, Sunny Huo, of Severson and Werson and has timely filed an Answer to Plaintiff's original Complaint. Thus, Plaintiff does **NOT** include an application for Default Judgment against Defendant Realty Mortgage in this Request.

 Plaintiff has reached a Settlement with Defendant Mehdi Nafai and is close to finalizing a Settlement Agreement with Defendant Mehdi Nafai and therefore does **NOT** include an application for Default Judgment against Defendant Mehdi Nafai in this Request.

### PROCEDURAL PREREQUISITES MET FOR COURT TO ENTER DEFAULT JUDGMENT AGAINST DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION

### DORIS ALICIA CORDOVA

1. Plaintiff filed his original Complaint in this Court on October 24th, 2007.

2. On November 1st, 2007,  Plaintiff served Defendant Doris Alicia Cordova via professional process server, Scott E. Lane of Wheels of Justice the following documents:

SUMMONS IN A CIVIL ACTION, COMPLAINT, INITIAL CASE MANAGEMENT SCHEDULING ORDER, CASE MANAGEMENT CONFERENCE ORDER, NOTICE OF AVAILABILITY OF MAGISTRATE JUDGE TO EXERCISE JURISDICTION, CONSENT TO JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE, ADR PACKAGE, ECF REGISTRATION

3. On November 13th, 2007,  I submitted a Certificate of Service regarding Defendant Doris Alicia Cordova to this Court using the ECF System for filing.

4.   At the time of the filing of this Request,  no answer or other responsive pleading has been filed by Defendant Doris Alicia Cordova.

5. Upon information and belief, Defendant Doris Alicia Cordova is neither an infant, an incompetent, nor in the military.

6. A copy of the Request for Entry of Default and a copy of this Request for Court Judgment has been mailed to Defendant Doris Alicia Cordova at her last known mailing address.

## SUMMIT MORTGAGE CORPORATION

1. Plaintiff filed his original Complaint in this Court on October 24th, 2007.

2. On November 1st, 2007, Plaintiff served Defendant Summit Mortgage Corporation via professional process server, Scott E. Lane, of Wheels of Justice, the following documents:

SUMMONS IN A CIVIL ACTION, COMPLAINT, INITIAL CASE MANAGEMENT SCHEDULING ORDER, CASE MANAGEMENT CONFERENCE ORDER, NOTICE OF AVAILABILITY OF MAGISTRATE JUDGE TO EXERCISE JURISDICTION, CONSENT TO JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE, ADR PACKAGE, ECF REGISTRATION

3.   On November 13th, 2007,  I submitted a Certificate of Service on Defendant Summit Mortgage Corporation to this Court using the ECF System for filing.

4.   At the time of the filing of this Request,  no answer or other responsive pleading has been filed by Defendant Summit Mortgage Corporation.

5. Upon information and belief, Defendant Summit Mortgage Corporation is neither an infant, incompetent, or in the military.

6.   A copy of the Request for Entry of Default and a copy of this Request for Court Judgment has been mailed to Defendant Summit Mortgage Corporation at its last known mailing address.

1

2

[Continued on Next Page: Proposed Judgment]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                              **JUDGMENT**

4   On motion of Scott A. Flaxman, the attorney for the Plaintiff, Ali Baalouach, it is hereby
    ORDERED and ADJUDGED that the Plaintiff, does recover from Defendant Doris Alicia
5   Cordova a.k.a. Dora Cordova and Defendant Summit Mortgage (jointly and severally) the
6   following:

7       1.  The sum of $215,000.00, for actual damages.

8       2.  The imposition of a constructive trust on the "yield spread premium payment" fee of
            $18,281.25 which was paid to Summit Mortgage Corporation.  This constructive trust
9           should be created for the benefit of the Plaintiff, Ali Baalouach.

10      3.  $54,843.75, which is an amount equal to three times the amount of charges for
            "settlement services" paid indirectly by the Plaintiff. ($18,281.25 yield spread premium
11          payment multiplied times three).

12      4.  Court costs, filing and mailing fees in the amount of $850.00.

13      5.  $450,000.00 in punitive damages.

14
        6.  Attorney fees of $75,000.00.
15
        7.  $65,000.00  (in lieu of loans at the actual approval rates and loan terms at the actual
16          approval rates rather than inflated rates and more oppressive terms).

17

18  The total amount the Plaintiff is entitled to recover from Defendant Doris Alicia Cordova a.k.a.
    Dora Corodova and Defendant Summit Mortgage (jointly and severally)  is equal to:
19
    **$878,975.00**, plus interest and pre-judgment interest at the legal rate in effect on the date of this
20  judgment.

21

    Dated: Tuesday February 12th, 2008
22  At:     San Francisco, California

23

24
                      By:   _____
25                              United States District  Court Judge, Hon. Martin J. Jenkins

1

2

3

4

5

6

7                                    [continued below]

8

9

10

11

12

13

14

15

16

17

18

19

20

21   Respectfully submitted,
22   s/Scott A. Flaxman_____

23

24

25

1

## **CERTIFICATE OF SERVICE**

2

3

I hereby certify that on February 6th, I electronically transmitted the attached document to the
Clerk of this Court using the ECF System for filing.

4

5     A copy of the foregoing was also sent via First Class U.S. Mail to:

6     SUMMIT MORTGAGE CORPORATION
      Attention: Doris Alicia Cordova
7     50 Surf View Drive, Bay Point, California 94565

8     Doris Alicia Cordova
      50 Surf View Drive, Bay Point, California 94565
9

10

11    s/Scott A. Flaxman_____
      Scott A. Flaxman
12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT A

U.S. Department of Housing and Urban Development

**A. Settlement Statement**

OMB No. 2502-0265

 **OLD REPUBLIC TITLE COMPANY**

| B. TYPE OF LOAN | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 1. ☐ FHA  2. ☐ FmHA  3. ☒ Conv. Unins. | 0111006084-JO | 7531026872 | |
| 4. ☐ VA  5. ☐ Conv. Ins. | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Ali Baalouach<br>604 Geary Ave<br>San Francisco, CA 94102 | | Realty Mortgage, LLC<br>2901 Douglas Boulevard Suite 205<br>Roseville, CA 95661 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 68 Cayuga Ave<br>San Francisco, CA 94101    (See Attachment) | Old Republic Title Company | |
| | Place of Settlement<br>3000 Clayton Road<br>Concord, CA 94519 | I. Settlement Date<br>11/1/2006 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,854.04 | 403. | |
| 104. PAYOFF EXISTING LOAN | 687,315.53 | 404. | |
| 105. PAYOFF EXISTING LOAN | 85,372.48 | 405. | |
| R.E. Tax Payment (Lot 21 Block 6752) | 4,762.88 | | |
| | | | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 783,304.93 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan 1st | 731,250.00 | 502. Settlement charges to Seller (line 1400) | |
| Principal amount of new loan 2nd | 146,250.00 | 503. Existing loan(s) taken subject to | |
| | | 504. | |
| | | 505. | |
| | | 506. | |
| | | 507. | |
| | | 508. | |
| | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 877,500.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 783,304.93 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | (877,500.00) | 602. Less reductions in amount due seller (line 520) | (          ) |
| **303. CASH** ☐ FROM  ☒ TO BORROWER | 94,195.07 | **603. CASH** ☐ TO  ☐ FROM SELLER | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the

Escrow No.: 0111006084-JO

| | | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|---|
| **L SETTLEMENT CHARGES** | | | | |
| 700. Total sales/broker's commission based on price $    @    %= | | | | |
|    Division of commission (line 700) as follows: | | | | |
| 701. | | | | |
| 702. | | | | |
| 703. Commission disbursed at settlement | | | | |
| 704. | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** See Attachment for Subordinate Financing Charges | | | 1,818.00 | |
| 801. Loan Origination Fee | | | | |
| 802. Loan Discount | | | 350.00 | |
| 803. Appraisal Fee | | | | |
| 804. Credit Report | | | | |
| 805. Lender's Inspection Fee | | | | |
| 806. Mortgage Insurance Application Fee | | | | |
| 807. Assumption Fee | | | 65.00 | |
| 808. Tax Service Fee | | | 775.00 | |
| 809. Underwriting Fee | | | 18.00 | |
| 810. Flood Certification Fee | | | | |
| 811. Realty Mortgage, LLC shall pay a yield spread premium of $18,281.25 to Summit Mortgage | | | | |
| 812. Wire Transfer Fee | | | 25.00 | |
| 813. Appraisal Review | | | 550.00 | |
| | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | 25.04 | |
| 901. Interest, 10/31/06 to 11/01/06, 1 days @ $25.04 | | | | |
| | | | | |
| | | | | |
| | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **1100. TITLE CHARGES** | | | | |
| | | | 30.00 | |
| 1106. Notary Fees to Jay Oxendine | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| 1108. Title insurance to | | | | |
|    (includes above items numbers:) 1102, 1103, 1106, Endorsements and Additional Title Fees, if any | | | | |
| 1109. | | | | |
| | | | 2,075.00 | |
| 1111. Integrated Refinance Insurance and Settlement Service | | | | |
| | | | | |
| | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording fees: Deed $    Mortgage $ 123.00    Releases $ | | | 123.00 | |
| 1202. City/county tax/stamps:    Deed $    Mortgage $ | | | | |
| 1203. State tax/stamps:    Deed $    Mortgage $ | | | | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. | | | | |
| 1302. | | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |

Attachment to HUD Statement

PROPERTY LOCATION

198 Rosseau
San Francisco, CA 94101

===== Continuation from Page1 =====

BUYER ADJUSTMENTS                                   SELLER ADJUSTMENTS

AMOUNTS PAID BY OR IN BEHALF OF BORROWER

DEPOSIT OR EARNEST MONEY — LINE 201

PRINCIPAL AMOUNT OF NEW LOAN(S) — LINE 202

Realty Mortgage, LLC
2901 Douglas Boulevard Suite 205.
Roseville, CA 95661
Loan No.: 7531026872
Position: 1
Principal amount                    731,250.00

Realty Mortgage LLC
2901 Douglas Boulevard Suite 205
Roseville, CA 95661
Loan No.: 7531026873
Position: 2
Principal amount                    146,250.00

Escrow No.: 0111006084-JO

Attachment to HUD Statement

| Lender | Realty Mortgage LLC<br>2901 Douglas Boulevard Suite 205<br>Roseville, CA 95661 | | |
|---|---|---|---|

Loan No.   7531026873

Subordinate Financing Charges

| Item | Borrower | Seller |
|---|---|---|
| Wire Fee – 2nd Ln | 25.00 | |
| Underwriting Fee – 2nd Ln | 200.00 | |
| Flood Certification – 2n Ln | 18.00 | |
| Broker Admin Fee - 2nd Ln | 550.00 | |
| Processing Fee – 2nd Ln | 1,025.00 | |
| Total | 1,818.00 | |