SCOTT A. FLAXMAN (SBN 241285)
**SCOTT FLAXMAN LAW**
200 Valley Drive #13
Brisbane, California 94005
Telephone: (415) 571-0582
Facsimile: (650) 952-0409
scottf@scottflaxmanlaw.com

**ATTORNEY FOR PLAINTIFF**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALI BAALOUACH,<br><br>Plaintiff<br><br>vs.<br><br>MEHDI NAFAI,<br><br>DORIS ALICIA CORDOVA,<br><br>SUMMIT MORTGAGE,<br><br>REALTY MORTGAGE, LLC,<br><br>Doe 1 through Doe 10,<br><br>Defendants | Case No.: 3:07-cv-05433-JSW<br><br>Judge: Hon. Jeferey S. White<br>[Case Referred to Magistrate Judge Joseph C. Spero for Report and Recommendation on Default Judgment]<br><br>**DECLARATION OF ALI BAALOUACH SUPPORTING ALI BAALOUACH'S MOTION FOR DEFAULT JUDGMENT AS TO DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION** |

1

The Plaintiff, Ali Baalouach, declares:

1. I am Ali Baalouach.

2. All the facts and statements made below are within my personal knowledge; anything I did not understand I asked questions about and had explanations given to me in English that were then translated for me into Arabic so that I could understand fully the facts and technical points made below. If called to testify I could, with the aid of a translator, testify competently to them.

3. This declaration has been translated to me in Arabic:

   وهذا هو ما أعنيه : باللّغة الانجليزيّة وتحت طائلة القانون يُسمونها بـ"الشّهادة" وقد تُرجمَت لي من اللّغة العربيّة.

4. I have suffered $200,629.82 in actual damages as a result of the Defendant Nafai, Defendant Doris Alicia Cordova and Defendant Summit Mortgage's ("Broker-Defendants") actions and as detailed in the fact section and as supported by Exhibits B-I. Which by this reference are incorporated herein [*Not reprinted herein*].

5. Exhibit B is a true and correct copy of closing documents from my purchase of my home at 68 Cayuga Avenue, San Francisco, California 94112 ("Property") showing my $83,000.00 down payment.

6. Exhibit C is a set of true and correct copies of my bank statements and a certified check detailing my $79,618.47 in loan payments since I purchased the Property.

7. Exhibit D is a set of true and correct copies of the HUD-1 Settlement Statement, City and County of SF Secured Tax Roll, and a Title Report for the Property dated July 27, 2007 detailing my $30,694.24 in property tax payments since I purchased the Property.

8. Exhibit E is a set of true and correct copies of my bank and credit card statements and San Francisco Public Utility Commission Billing Register detailing my $760.16 in payments for water and sewer charges since I purchased the property.

9. Exhibit F is a master spreadsheet detailing my total damages incurred as shown in my other Exhibits.

DECLARATION OF ALI BAALOUACH SUPPORTING ALI BAALOUACH'S MOTION FOR DEFAULT JUDGMENT AS TO DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION

10. Exhibit G is a set of true and correct copies of my bank and credit card statements detailing my payments to Home Depot, Lowes and Discount Building Supply for my **$6,556.95** in repairs for my Property.

11. Exhibit H is a true and correct copy of the Purchase and Sale Agreement dated August 9, 2007 for my sale of my Property to Ivan Castro and a true and correct copy of Countrywide's written approval of this sale on March 18th, 2008.

12. Exhibit I is a true and correct copy of the, "Notice of Trustee Sale" with a stated sale date of February 19, 2008 at 2:00 p.m. that had previously been posted on my front door.

## FACTS

1. I speak Moroccan "Berber" as my first language and Arabic as my second language.

2. On or about September, 2006 I discussed the possibility of refinancing the Property with Mehdi Nafai (Defendant Nafai).

3. All conversations between me and Defendant Nafai regarding the refinancing of the Property were conducted in Arabic.

4. Defendant Nafai was acting as agent and/or employee of Defendant Summit Mortgage and Defendant Doris Alicia Cordova.

5. My only information and communication, prior to the date of loan closing, regarding the refinancing of the Property came from information supplied by Defendant Nafai either in person or by telephone. Defendant Nafai supplied all information concerning refinancing the Property to me in Arabic.

6. Defendant Nafai agreed to serve as my agent and to provide me with mortgage brokerage services in connection with my desire to refinance the existing loans on my Property. In fact, Defendant Nafai represented to me that the Broker-Defendants would assist me in obtaining a good loan at a low interest rate.

7. Defendant Nafai represented to me that the total fee the Defendant Summit Mortgage, Defendant Doris Alicia Cordova and Defendant Nafai would receive for the mortgage brokerage services in connection with the refinance of the Property would not exceed a total of $3,500.00 (three thousand five hundred dollars).

8. Defendant Nafai represented to me that the total fee the Defendant Summit Mortgage Company, Defendant Doris Alicia Cordova and Defendant Nafai would receive for the mortgage brokerage services in connection with the refinance of the Property would be paid entirely by the lender and that I would NOT bear any of the cost of the fee.

**DECLARATION OF ALI BAALOUACH SUPPORTING ALI BAALOUACH'S MOTION FOR DEFAULT JUDGMENT AS TO DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION**

9. Defendant Nafai provided to me and defendants Doris Alicia Cordova and Summit Mortgage Company loan application information and paperwork.

10. The existing first loan on the Property was secured by a Deed of Trust with EMC Corporation as the beneficiary. The existing second loan on the Property was secured by a Deed of Trust with Greenpoint Mortgage as the beneficiary.

11. The loans supplied for the refinance were brokered by Defendant Summit Mortgage and Defendant Doris Alicia Cordova and funded by Defendant Realty Mortgage. Funds from the refinance were paid out to EMC Corporation in satisfaction of the First Trust Deed secured by the Property in the amount of $687,315.53. Funds were paid out to Greenpoint Mortgage in satisfaction of the Second Trust Deed secured by the Property in the amount of $85,372.48.

12. On or about October 26th, 2006, Defendant Summit Mortgage, Defendant Doris Alicia Cordova, Defendant Nafai and Defendant Realty Mortgage conducted a loan closing to consummate its residential loan to me.

13. The loan closing was conducted at 3000 Clayton Road, Concord, California 94519.

14. The proceeds of the two, new loans were to refinance the two, existing deeds of trust secured by my Property.

15. The two loans were secured against title to my principal dwelling, the Property, by two Separate Deeds of Trust recorded with the San Francisco Assessor-Recorder. The First Deed of Trust is recorded as DOC-2006-I278024-00, Acct 4-Old Republic Title Company, Thursday, November 2nd, 2006, Reel J259 Image 0160. The Second Deed of Trust is recorded with the San Francisco Assessor-Recorder, as DOC-2006-I278025-00, Acct 4-Old Republic Title Company, Thursday, November 2nd, 2006, Reel J259 Image 0161.

16. On or about November 1, 2006, I received a "HUD-1" Settlement Statement ("Settlement Statement"), dated November 1, 2006.

17. A true and accurate copy of the "Settlement Statement" is attached to this Declaration as Exhibit J, and by this reference is incorporated herein [*not reprinted herein*].

18. Among the various fees charged in connection with my loan included an "Appraisal Fee" of $350, "Tax Service Fee" of $65, "Underwriting Fee" of $775, a "Flood Certification Fee" of $18, a "Wire Transfer Fee" of $25, an "Appraisal Review" of $550, an "Underwriting Fee-2nd Ln" of $200, a "Broker Admin Fee-2nd Ln" of $550, a "Processing Fee-2nd Ln" of $1,025, a "Flood Certification Fee-2n [sic] Ln" of $18, a "Wire Fee-2nd Ln" of $25, "Recording Fees" of $123

4

DECLARATION OF ALI BAALOUACH SUPPORTING ALI BAALOUACH'S MOTION FOR DEFAULT JUDGMENT AS TO DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION

19. Furthermore, the Settlement Statement provides on line 811 as follows: "REALTY MORTGAGE, LLC SHALL PAY A YIELD SPREAD PREMIUM OF $18,281.25 TO SUMMIT MORTGAGE."

20. Defendant Realty Mortgage in fact paid this fee to Defendant Doris Alicia Cordova and Defendant Summit Mortgage Company in exchange for those defendants' referral of me to Defendant Realty Mortgage for the purpose of making a "federally related mortgage loan" to me.

21. Defendant Summit Mortgage Corporation and Defendant Doris Alicia Cordova's receipt of this steering fee increased my settlement costs. Defendant Summit Mortgage and Defendant Doris Alicia Cordova arranged for me to receive a loan at a higher interest rate and with more oppressive loan terms, including a pre-payment penalty than I could have otherwise received so that Defendant Doris Alicia Cordova and Defendant Summit Mortgage Corporation could receive the "yield spread premium" payment.

22. This fee for steering was paid indirectly by me through a higher interest rate, and inferior loan terms than that which I could have otherwise received.

23. Defendant Doris Alicia Cordova and Summit Mortgage Corporation received this fee pursuant to an agreement or understanding that business incident to or a part of a real estate "settlement service" involving a "federally related mortgage loan" would be referred by Defendant Doris Alicia Cordova and Summit Mortgage Corporation to Defendant Realty Mortgage.

24. At all times relevant herein, I had no understanding and received no explanation of the fact that Defendant Doris Alicia Cordova and Defendant Summit Mortgage received this "yield spread premium" fee as a payment for Defendant Doris Alicia Cordova and Defendant Summit Mortgage steering me into a loan with a higher interest rate and more onerous loan terms.

25. At all times relevant herein, I had no understanding and received no explanation of the fact that this "yield spread premium" fee was paid indirectly by me through a higher interest rate and more oppressive loan terms than were otherwise available to me.

26. Neither Defendant Doris Alicia Cordova, nor Defendant Summit Mortgage nor Defendant Nafai disclosed to me that the payment of this "yield spread premium" fee to Defendants Summit Mortgage and Doris Alicia Cordova constituted a kickback or referral fee at or prior to the time that these Defendants made the referral to Defendant Realty Mortgage in connection with Defendant Realty Mortgage funding my loan.

27. Instead, the fee appeared on the Settlement Statement listed solely as "yield spread premium" without prior, contemporaneous or future explanation in Arabic (or in any language) as to its meaning.

DECLARATION OF ALI BAALOUACH SUPPORTING ALI BAALOUACH'S MOTION FOR DEFAULT JUDGMENT AS TO DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION

28. I was not advised in a manner that I was reasonably capable of understanding that there was a pre-payment penalty on the new loans.

29. I was not advised in a manner that I was reasonably capable of understanding that the First Trust Deed had a negative amortization component.

30. I was not advised in a manner that I was reasonably capable of understanding that if I made the minimum loan payment that the loan balance would actually grow larger rather than smaller over time.

31. The Property is currently in default and a Trustee Sale that was originally scheduled for February 19th, 2008 has been rescheduled twice since February 19th, 2008. As of February 4, 2008 the outstanding loan balances on the two loans secured by the Property was approximately $948,160.28.

32. I am currently attempting to sell the Property and a contract for sale, dated, August 9th, 2007 has been entered with a buyer for a sales price of $860,000. The current loan servicing company, Countrywide, has, twice since August 9th, 2007, stated that they were rejecting the sale and then reversed their decision and stated that they were reopening the sale and reviewing the terms.

33. On January 31, 2008, Countrywide stated that the prospect of the sale going through was good and that they would have an answer in 7 to 10 business days.

34. On March 14, 2008 Countrywide stated that they had approved the short sale and that they were faxing and mailing an approval letter granting an approval for the short-sale.

35. On March 18, 2008 Countrywide faxed and mailed out a letter granting approval for the short-sale.

36. On April 15th, 2008 Countrywide stated that Countrywide needed more time to process the short-sale because Countrywide had assigned a different work-out negotiator to the first loan and a different negotiator to the second loan secured by the Property.

37. On May 21, 2008 Countrywide stated that they needed to do another appraisal on the home (this is the third appraisal Countrywide has done on the home) before they could finalize the short-sale.

38. Countrywide also stated that the foreclosure sale date had been postponed to allow for the sale to go through.

39. When either the short-sale or the foreclosure sale goes through, I will have suffered $200,629.82 in losses in payments for my Property. I have therefore incurred $200,629.82 in actually damages which I seek to recover from Defendant Doris Alicia Cordova and Defendant Summit Mortgage .

DECLARATION OF ALI BAALOUACH SUPPORTING ALI BAALOUACH'S MOTION FOR DEFAULT JUDGMENT AS TO DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION

I declare under the penalty of perjury under the laws of the State of California that the above and foregoing is true and correct. Executed this 23 day of May, 2008 at San Francisco, California.

By: _____
Ali Baalouach in "English"

By: _____
Ali Baalouch in "Arabic"

DECLARATION OF ALI BAALOUACH SUPPORTING ALI BAALOUACH'S MOTION FOR DEFAULT JUDGMENT AS TO DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26th, 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.

s/Scott A. Flaxman
Scott A. Flaxman

DECLARATION OF ALI BAALOUACH SUPPORTING ALI BAALOUACH'S MOTION FOR DEFAULT JUDGMENT AS TO DORIS ALICIA CORDOVA AND SUMMIT MORTGAGE CORPORATION