# EXHIBIT B

CALIFORNIA
ASSOCIATION
OF REALTORS®

**ND JOINT ESCROW INSTRUCTIONS**
For Use With Single Family Residential Property — Attached or —atached
(C.A.R. Form RPA-CA, Revised 10/02)

_____, California.

Date **February 14, 2005** , at _____ **San Francisco** _____ ("Buyer").

1. **OFFER:**
   A. THIS IS AN OFFER FROM **All Haalotuch** _____ **San Francisco  CA  94112**
   B. THE REAL PROPERTY TO BE ACQUIRED is described as **68 cayuga ave, san francisco**, situated in _____, Assessor's Parcel No. **6752-021** , County of **San Francisco**, California, ("Property").
      **san francisco**
   C. THE PURCHASE PRICE offered is **Eight Hundred Twenty-Five Thousand** Dollars $ **825,000.00**
   D. CLOSE OF ESCROW shall occur on _____ (date) (or ☒ **30** Days After Acceptance).

2. **FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of . . . . . . . . . . . . . . . . . . . . . $ **30,000.00**
      ), by personal check
      to the agent submitting the offer (or to ☐ _____ ), by personal check
      (or ☐ _____ ), made payable to _____ **Alliance Title** _____ ,
      which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance ), with
      (or ☐ _____
      Escrow Holder, (or ☐ into Broker's trust account).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . $ **660,000.00**
      within _____ Days After Acceptance, or ☐ _____ . . . . $
   C. FIRST LOAN IN THE AMOUNT OF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **82,000.00**
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum interest of ____ % fixed rate, or ____ % initial adjustable rate with a maximum interest rate of ____ %, balance due in ____ years, amortized over ____ years, Buyer shall pay loan fees/points not to exceed _____ . (These terms apply whether the designated loan is conventional, FHA or VA.)
      (2) ☐ FHA ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.)
          Seller shall pay ____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer, ☐ not to exceed $ _____ . Seller shall pay the cost of lender required Repairs (including those for wood destroying pests not otherwise provided for in this Agreement, ☐ not to exceed $ _____ . (Actual loan amount may increase if mortgage insurance premiums, funding fees or closing costs are financed.)
   D. ADDITIONAL FINANCING TERMS: ☐ Seller financing, (C.A.R. Form SFA); ☒ secondary financing, . . . . . . . . . . $ **53,000.00**
      (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B)
   E. BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of . . $ **825,000.00**
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. PURCHASE PRICE (TOTAL): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **825,000.00**
   G. LOAN APPLICATIONS: Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. LOAN CONTINGENCY REMOVAL: (i) Within 17 (or ☒ **21** ) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
   J. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or ☐ _____ ) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or _____ ) Days After Acceptance.
   K. ☐ NO LOAN CONTINGENCY (if checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   L. ☐ ALL CASH OFFER (if checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.

3. **CLOSING AND OCCUPANCY:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at _____ ☐ AM ☐ PM, ☐ on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their insurance and legal advisors.

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS, INC. ALL RIGHTS RESERVED.

RPA-CA REVISED 10/02 (PAGE 1 OF 8)  **CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Reviewed by _____ Date _____

Agent: **brad** _____ Phone: (925)258-1111  Fax: (925)253-8339  Prepared using WINForms® software
Broker: Alain Pinel 2 Theater Square suite 315 Orinda CA 94563-



Case 3:07-cv-05433-JSW　Document 25　Filed 05/26/2008　Page 3 of 6

roperty Address: 68 osyuga ave, san francisco

) Days Prior to C...e Of Escrow, unless otherwise agreed

C. **Tenant-occupied property:** (i) Property shall be vacant at least 5 (or ☐ ___ ) Days Prior to C...e Of Escrow, unless otherwise agreed in writing, Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (if checked) ☐ Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

OR (iii) (if checked) ☐ This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS** (If checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. **WOOD DESTROYING PEST INSPECTION:**

(1) ☐ Buyer ☐ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by ___, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas ___. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ (If checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. **OTHER INSPECTIONS AND REPORTS:**

(1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected ___
(2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity ___
(3) ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report prepared by ___
(4) ☐ Buyer ☐ Seller shall pay for the following inspection or report ___
(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report ___

C. **GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☐ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
(2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. ___

D. **ESCROW AND TITLE:**

(1) ☒ Buyer ☐ Seller shall pay escrow fee ___
　　Escrow Holder shall be ___
(2) ☒ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 12E ___
　　Owner's title policy to be issued by ___
　　(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. **OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee ___
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or transfer fee ___
(3) ☐ Buyer ☐ Seller shall pay HOA transfer fee ___
(4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees ___
(5) ☐ Buyer ☐ Seller shall pay the cost, not to exceed $ ___, of a one-year home warranty plan, issued by ___
　　with the following optional coverage: ___
(6) ☐ Buyer ☐ Seller shall pay for ___
(7) ☐ Buyer ☐ Seller shall pay for ___

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordnance location disclosure (C.A.R. Form SSD).

(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Buyer's Initials ( ___ )( ___ )
Seller's Initials ( ___ )( ___ )
Reviewed by ___ Date ___

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 2 OF 6)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 6)**

Ali's dublex.

MAY-15-08   03:43PM   FROM-Alain Pinel Orinda                    T-539  P.004/015  F-615
Case 3:07-cv-05433-JSW    Document 25    Filed 05/26/2008    Page 4 of 61
Property Address: 68 cayuga ave. san francisco CA 94112                    Date: February 14, 2005

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)
(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

**B. NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

**C. DATA BASE DISCLOSURE: NOTICE:** The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

**6. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**
A. SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).
B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

**7. CONDITIONS AFFECTING PROPERTY:**
A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
B. SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).
C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.
D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

**8. ITEMS INCLUDED AND EXCLUDED:**
A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.
B. ITEMS INCLUDED IN SALE:
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and
(3) The following items: _2 washers, 2 dryers, 2 ovens, 2 refrigerators,_
_____
(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
(5) All items included shall be transferred free of liens and without Seller warranty.
C. ITEMS EXCLUDED FROM SALE: _____

**9. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B(1). Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 3 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)

Buyer's Initials ( ___ )( ___ )
Seller's Initials ( ___ )( ___ )
Reviewed by _____ Date _____

AH's dublex.

operty Address: 68 CARVER AVE SAN FRANCISCO

**D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

**E. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such Instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

5. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.

BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)    Buyer's Initials _MD_ / _____    Seller's Initials _VD_ / _____

17. **DISPUTE RESOLUTION:**

**A. MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

**B. ARBITRATION OF DISPUTES:** (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

"**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

Buyer's Initials ( _MD_ )( _JK_ )
Seller's Initials ( _VD_ )( _JR_ )
Reviewed by _____ Date _____

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 6 OF 8)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)

Property Address: 68 caymus ave, _____, the following items shall be PAID

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in w___, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

25. **OTHER TERMS AND CONDITIONS,** including attached supplements:
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____ )
    C. ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    D. *Sellers to credit buyer $7000.00 of non-recurring closing cost.*

26. **DEFINITIONS:** As used in this Agreement:
    A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. "Agreement" means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
    D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
    F. "Days" means calendar days, unless otherwise required by Law.
    G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the date on which the specified event is scheduled to occur.
    I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. "Notice to Buyer to Perform" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(4)) to remove a contingency or perform as applicable.
    L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. Singular and Plural terms each include the other, when appropriate.

Buyer's Initials ( ____ )( ____ )
Seller's Initials ( ____ )( ____ )
Reviewed by _____ Date ____

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 6 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)

Property Address: 68 CAYUGA ave, san francisc, CA 94112

**17. AGENCY:**

**A. DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

**B. POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

**C. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

Listing Agent _____ **Prudential california Realty** _____ (Print Firm Name) is the agent
of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.

Selling Agent _____ **Alain Pinal Realtors** _____ (Print Firm Name) (if not same
as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and C, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

**B.** A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance
(or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) If Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) If Buyer and Seller instruct Escrow Holder to cancel escrow.

**D.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 7 OF 8)

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )
Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)

Ali's debtor,

CALIFORNIA
ASSOCIATION
OF REALTORS®

# BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 10/02)

_____ ("Property").

Property Address: 68 cayuga ave, san francisco CA 94112

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other system. improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**
1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)
2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)
3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.
4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials (      )(      )
Seller's Initials (      )(      )
Reviewed by _____ Date _____

BIA REVISED 10/02 (PAGE 1 OF 2)

Phone: (925)258-1111   Fax: (925)253-8339   Prepared using WINForms® software

Agent: imad
Broker: Alain Pinel 2 Theater Square suite 316 Orinda CA 94563-



Property Address: _68 Espuela Ave, San Ramon_ (Roofing contractors are best suited to determine these conditions.)

5. **ROOF:** Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)
6. **POOL/SPA:** Cracks, leaks or operational problems. (Pool contractors are best suited to determine the condition of pool and spa and components.)
7. **WASTE DISPOSAL:** Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
8. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.
9. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)
10. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)
11. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)
12. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)
13. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants; and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)
14. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about these restrictions and other requirements.)
15. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas of the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (x) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyer is encouraged to read it carefully.

| Buyer Signature _A.B./S.M. Couzch_ | Date _02/5/05_ | Buyer Signature | Date _2/16/05_ |
|---|---|---|---|
| Seller Signature _Patricia Carazo Ramsey_ | Date _2-15-05_ | Seller Signature _James Ramsey_ | Date |

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.,
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

BIA REVISED 10/02 (PAGE 2 OF 2)        BUYER'S INSPECTION ADVISORY (BIA PAGE 2 OF 2)

ASSOCIATION
OF REALTORS®

_____ Bruno _____, California.
("Offer"),
Date _2-15-05_ at _Sen_ Bruno _____ ("Property"),
This is a counter offer to the: ☑ California Residential Purchase Agreement, ☐ Counter Offer, or ☐ Other _____ ("Property"),
dated _2-14-05_ on property known as _____ ("Seller").
between _Ali Boolough_ ("Buyer") and _James & Patricia Ramsey_ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. _1. Purchase Price to be 825,000 with no credit back for Rent_

   D. The following attached supplements are incorporated into this Counter Offer: ☐ Addendum No. _____

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or _____, who is authorized to receive it, by 5:00PM on the third day after this Counter Offer is made or, (if checked) by ☐ _2-16-05_ (date), at _2_ AM/PM. This Counter Offer may be executed in counterparts.

4. ☐ **(If checked:) MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____, who is authorized to receive it by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by ☐ _____ (date), at _____ AM/PM. Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. OFFER: BUYER or SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Date _2-15-05_
   Date _2-15-05_

6. ☑ **ACCEPTANCE:** I/WE accept the above Counter Offer (If checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   Date _2/16/05_  Time _12:55_ AM/PM
   Date _____  Time _____ AM/PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer. NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   Date _____  Time _____ AM/PM
   Date _____  Time _____ AM/PM

8. (_____/_____) (initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____, at _____ AM/PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)  Print Date BDC Oct 04

MASTER COPY

COUNTER OFFER (CO PAGE 1 OF 1)

ASSOCIATION
OF REALTORS®

For use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Date _2-15-05_ at _San Bruno_, California.
This is a counter offer to the: ☒ California Residential Purchase Agreement, ☐ Counter Offer, or ☐ Other _____ ("Offer,")
dated _2-14-05_ on property known as _612 Baclough_ ("Property")
between _412 Baclough_ ("Buyer") and _____ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. _1. Purchase Price to be 635,000 with no credit back for DIRCO._

   D. The following attached supplements are incorporated into this Counter Offer: ☐ Addendum No. ____

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or ___ who is authorized to receive it, by 5:00PM on the third day after this Counter Offer is made or, (if checked) by ☐ _2-14-05_ (date), at _2_ AM/PM. This Counter Offer may be executed in counterparts.

4. ☐ (If checked:) **MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by ___ who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made on, (if checked) by ☐ ___ (date), at ___ AM/PM. Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER: THE SELLER/BUYER ACKNOWLEDGES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   Date _2-15-05_
   Date _2-15-05_

6. **ACCEPTANCE: I/WE accept the above Counter Offer (if checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.**
   Date _2/16/05_  Time _10:55_ ☒AM/PM
   Date ___  Time ___ AM/PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer. NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   Date ___  Time ___ AM/PM
   Date ___  Time ___ AM/PM

8. (____) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _2-16-05_ at _1:55_ AM/PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ___ Date ___

CO REVISED 10/04 (PAGE 1 OF 1)  Print Date BDC Oct 04
**MASTER COPY**
COUNTER OFFER (CO PAGE 1 OF 1)

# Alliance Title

## RECEIPT

No: **501721**

| 11322547 | 508 | DJR | 02/25/2005 |
|---|---|---|---|
| Escrow No. | Branch | Officer | Date |

Comerica Bank                    Funds in the amount of         $5,000.00

were received from      Ali Baalouach

for the account of      /Baalouach

Type of transaction     CF

in the form of          121000248

BY _____
    Rheanna Burdette/Debi Burdette

---

00307      11:24
Office AU #     1210(8)

**OFFICIAL CHECK**                              0030705862

Operator I.D.:  cu003268

                                               February 24, 2005

PAY TO THE ORDER OF   ***ALLIANCE TITLE***
                      ***ESCROW NO 11322547***

***Five thousand dollars and no cents***                **$5,000.00**

WELLS FARGO & COMPANY ISSUER
420 MONTGOMERY STREET
SAN FRANCISCO, CA 94163
PAYABLE AT WELLS FARGO BANK, N.A.              VOID IF OVER US $ 5,000.00
FOR INQUIRIES CALL (480) 394-3122              _____
                                                  CONTROLLER

⑈0030705862⑈ ⑆121000248⑈4861 505345⑈

**File Copy**

2 Theater Square #310, - Orinda, CA - 94563 - (925) 253-3900

Imad



DEPOSIT TICKET
FOR CLEAR COPY, PRESS FIRMLY

DATE 2-13-05

CURRENCY
COINS
CHECKS    1,307,000.00    25,000.00

TOTAL    21,000,00

Comerica
Comerica Bank
Financial Service Group-South
www.comerica.com

ALLIANCE TITLE COMPANY
ESCROW TRUST ACCOUNT
DALY CITY BRANCH # 5640                                  $

TOTAL
ITEMS

CHECKS AND OTHER ITEMS
ARE RECEIVED FOR DEPOSIT
SUBJECT TO THE PROVISIONS
OF THE UNIFORM COMMER-
CIAL CODE OR ANY APPLICA-
BLE COLLECTION AGREEMENT.
DEPOSITS MAY NOT BE AVAIL-
ABLE FOR IMMEDIATE WITH-
DRAWAL.

⑆552077772⑆ ⑈891610303⑊   36

---

VOID VOID VOID VOID

CASHIER'S CHECK                              0030703800

00307    11-28
Office AU 5    1210(8)

Operator I.D.: c200083555                                    February 23, 2005

PAY TO THE ORDER OF    ***ALLIANCE TITLE***
                       ***ESCROW# 11322547***

***Twenty-five thousand dollars and no cents***          ***$25,000.00**

WELLS FARGO BANK, N.A.
420 MONTGOMERY STREET
420 MONTGOMERY AVE.
SAN FRANCISCO, CA 94103
FOR INQUIRIES CALL (800) 394-5122

*VOID IF OVER US $ 25,000.00*

Elizabeth Martin-Wilson
AUTHORIZED SIGNATURE

⑈0030703800⑈ ⑆121000248⑆48E1 505295⑊



# EXHIBIT C

May 14 through June 14, 2005

**Account Number: 201-6073884**
Page 3 of 4

Other withdrawals-continued

| Date | Description | $ Amount |
|------|-------------|---------:|
| 06/06 | POS Purchase - 06/05 Mach ID 000000 SY8 Restaurant SY8 Restausan Franciscoca 3806 ?MCC=5411 121042882DA | 249.28 |
| 06/06 | Check Crd Purchase 06/05 Restaurant Depot San Francisco Ca 446024XXXXXX3806 157540008845589 ?MCC=5411 121042882DA | 94.68 |
| 06/07 | Bill Pay Greenpoint Mortg RECURRING0086451499 On 06-07 | 2,439.49 |
| 06/07 | Bill Pay Option One Mortg RECURRING0015841786 On 06-07 | 1,943.81 |
| 06/13 | POS Purchase - 06/10 Mach ID 000000 Target T0320 Cotarget T03Colma Ca 3806 ?MCC=5310 121042882DA | 125.26 |
| 06/13 | POS Purchase - 06/11 Mach ID 000000 Macys West 010Macys Westsan Franciscoca 3806 ?MCC=5311 121042882DA | 70.53 |
| 06/13 | POS Purchase - 06/11 Mach ID 000000 Macys West 010Macys Westsan Franciscoca 3806 ?MCC=5311 121042882DA | 65.10 |
| 06/13 | Check Crd Purchase 06/10 Mervyns 00000141 Daly City Ca 446024XXXXXX3806 163540004764397 ?MCC=5311 121042882DA | 46.13 |
| 06/14 | POS Purchase - 06/13 Mach ID 000000 Sou The Home Desou The Hocolma Ca 3806 ?MCC=5300 121042882DA | 91.85 |

| | | |
|------|-------------|---------:|
| Total other withdrawals | | $8,080.64 |

Save money by enrolling in the Checking Add-on Package. With the Checking Add-on Package you get free Wells Fargo Exclusive Checks or $5 discounts on other check designs, and no fee cashier's checks, official checks and personal money orders. You'll also receive savings on prescription medications, hotels, car rentals, theme parks, and more. All for just $5 per month. See your banker for more details.

**Daily balance summary**

| Date | $ Balance | Date | $ Balance |
|------|----------:|------|----------:|
| 05/13 | 8,005.79 | 05/31 | 5,102.83 |
| 05/18 | 6,876.89 | 06/01 | 5,051.28 |
| 05/20 | 6,374.21 | 06/03 | 7,340.56 |
| 05/23 | 5,784.91 | 06/06 | 6,996.60 |
| 05/24 | 5,644.78 | 06/07 | 2,613.30 |
| 05/26 | 5,624.26 | 06/13 | 2,306.28 |
| 05/27 | 5,446.46 | 06/14 | 2,214.43 |

June 15 through July 15, 2005

**Account Number: 201-6073884**
Page 3 of 5

Other withdrawals-continued

| Date | Description | $ Amount |
|------|-------------|----------|
| 06/30 | Check Crd Purchase 06/29 Kohl'S #0757 Vacaville Ca 446024XXXXX3806 181540008060361 ?MCC=5311 121042882DA | 376.18 |
| 07/01 | POS Purchase - 06/30 Mach ID 000000 Sou The Home Desou The Hocolma Ca 3806 ?MCC=5300 121042882DA | 518.43 |
| 07/01 | Check Crd Purchase 06/29 Chutney San Francisco Ca 446024XXXXX3806 182540005480624 ?MCC=5812 121042882DA | 7.00 |
| 07/05 | POS Purchase - 07/05 Mach ID 000000 SFI0439 170. S.SFI0439 17San Franciscoca 3806 ?MCC=5411 121042882DA | 161.78 |
| 07/05 | POS Purchase - 07/05 Mach ID 000000 Sou The Home Desou The Hocolma Ca 3806 ?MCC=5300 121042882DA | 150.41 |
| 07/05 | POS Purchase - 07/04 Mach ID 000000 Sou The Home Desou The Hocolma Ca 3806 ?MCC=5300 121042882DA | 138.59 |
| 07/05 | POS Purchase - 07/05 Mach ID 000000 Sou The Home Desou The Hocolma Ca 3806 ?MCC=5300 121042882DA | 58.39 |
| 07/05 | POS Purchase - 07/05 Mach ID 000000 1695 Mission Stdiscount Bsan Franciscoca 3806 ?MCC=5211 121042882DA | 49.90 |
| 07/05 | POS Purchase - 07/05 Mach ID 000000 El Mansoura Intel Mansoursan Franciscoca 3806 ?MCC=5411 121042882DA | 48.00 |
| 07/05 | POS Purchase - 07/04 Mach ID 000000 University Arcouniversityberkeley Ca 3806 ?MCC=5541 121042882DA | 9.50 |
| 07/05 | POS Purchase - 07/05 Mach ID 000000 Cheese Boutiquecheese Bousan Franciscoca 3806 ?MCC=5451 121042882DA | 4.50 |
| 07/06 | Bill Pay Emc Mortgage Cor RECURRING0010765832 On 07-06 | 2,439.49 |
| 07/06 | Bill Pay Option One Mortg RECURRING0015841786 On 07-06 | 1,943.81 |
| 07/06 | Bill Pay Greenpoint Mortg RECURRING0086451499 On 07-06 | 543.03 |
| 07/06 | Check Crd Purchase 07/05 Discount Building Supp San Francisco Ca 446024XXXXX3806 187540006231276 ?MCC=5211 121042882DA | 94.00 |
| 07/06 | POS Purchase - 07/06 Mach ID 000000 Sou The Home Desou The Hocolma Ca 3806 ?MCC=5300 121042882DA | 34.93 |
| 07/06 | Savings Overdraft Transfer Fee | 10.00 |
| 07/07 | POS Purchase - 07/07 Mach ID 000000 1695 Mission Stdiscount Bsan Franciscoca 3806 ?MCC=5211 121042882DA | 222.95 |
| 07/07 | Check Crd Purchase 07/06 Discount Building Supp San Francisco Ca 446024XXXXX3806 188540007832667 ?MCC=5211 121042882DA | 18.91 |
| 07/08 | POS Purchase - 07/08 Mach ID 000000 Sou The Home Desou The Hocolma Ca 3806 ?MCC=5300 121042882DA | 705.64 |
| 07/08 | POS Purchase - 07/08 Mach ID 000000 CNS Lowe'S CNS Lowe'Ssan Bruno Ca 3806 ?MCC=5211 121042882DA | 606.45 |

July 16 through August 12, 2005

**Account Number: 201-6073884**
Page 2 of 4


Protect Your Family's Financial Future.

You could save up to 70% through the Wells Fargo Select Term Life Insurance
Program. Quickly compare plans online to find coverage tailored to your needs
and budget. Protect your family's financial future today. Visit
wellsfargospecial.com and enter keyword: Insurance Savings

Insurance products available through Wells Fargo Insurance, Inc. or licensed
affiliates and in CA through Wells Fargo Bank, N.A. CA license #0800827.

------------------------------------------------------------------------------
**Activity detail**
**Deposits**

| Date | Description | Amount |
|------|-------------|--------|
| 07/18 | Transfer From Sav # 000002016075004 | $2,000.00 |
| 07/19 | Deposit | 200.00 |
| 07/27 | Deposit | 2,289.59 |
| 08/02 | Deposit | 1,800.00 |
| 08/03 | Transfer From Sav # 000002016075004 | 3,000.00 |
| 08/08 | Deposit | 1,700.00 |
| 08/11 | Deposit | 1,099.00 |
| Total deposits | | $12,088.59 |

**Withdrawals**
**Checks**

| Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|----------|--------|------|----------|
| 1051 | 08/05 | 3,907.62 | | | |
| Total checks | | | | | $3,907.62 |

**Other withdrawals**

| Date | Description | $ Amount |
|------|-------------|----------|
| 07/18 | T.M.C.C Loan Pmt 050716 01961308920001 Baalouach Ali | 418.93 |
| 07/18 | POS Purchase - 07/15 Mach ID 000000 Sou The Home Desou The Hocolma Ca 3806 ?MCC=5300 121042882DA | 149.98 |
| 07/18 | POS Purchase - 07/16 Mach ID 000000 Silver Gas Colmsilver Gascolma Ca 3806 ?MCC=5541 121042882DA | 21.50 |
| 07/20 | Emc Mtg Corp Speedpay 050720 0010765832 Ali Baalouach | 2,449.44 |
| 07/20 | Check Crd Purchase 07/19 Fregosi & Co Paints San Francisco Ca 446024XXXXXX3806 201540007556709 ?MCC=5231 121042882DA | 38.18 |
| 07/21 | Check Crd Purchase 07/19 Blockbuster Video #687 San Francisco Ca 446024XXXXXX3806 202540006434933 ?MCC=7841 121042882DA | 16.26 |
| 07/28 | Mortgage Jit Pmt 8007845566 050728 XXXXX8334 Baalouach, Ali | 1,727.23 |
| 08/08 | Bill Pay Emc Mortgage Cor RECURRING0010765832 On 08-08 | 2,439.49 |

August 13 through September 15, 2005

**Account Number: 201-6073884**
Page 2 of 3

Income Protector Plus, underwritten by National Union Fire Insurance Company of Pittsburgh, PA., provides up to $1,200,000 in insurance coverage in the event of a covered accidental Permanent and Total Disability.

Call 1-800-505-9514 to learn more and receive certificates redeemable for $15 in gas rebates just for listening to the offer.

Insurance is available through Wells Fargo Insurance, Inc. or licensed affiliates. In CA through Wells Fargo Bank, N.A. license #0800827. Wells Fargo Insurance, Inc. and its affiliates are licensed agents and are compensated by the insurer for placing this coverage.

*Not insured by FDIC or any federal government agency *Not a deposit of or guaranteed by any bank*

------------------------------------------------------------------------

**Activity detail**
**Deposits**

| Date | Description | Amount |
|---|---|---|
| 08/16 | Deposit | $450.00 |
| 08/25 | Deposit | 1,800.00 |
| 08/29 | Deposit | 120.00 |
| 09/08 | Deposit | 1,656.00 |
| 09/12 | Deposit | 1,600.00 |
| 09/13 | Deposit | 500.00 |
| Total deposits | | $6,126.00 |

**Withdrawals**

**Other withdrawals**

| Date | Description | $ Amount |
|---|---|---|
| 08/17 | T.M.C.C Loan Pmt 050816 01961308920001 Baalouach Ali | 418.93 |
| 09/06 | Sac Cnty Ubil Util Pymnt 050901 005000222369 Ali Baalouach | 66.83 |
| 09/07 | Bill Pay Emc Mortgage Cor RECURRING0010765832 On 09-07 | 2,439.49 |
| 09/12 | Bank Originated Debit | 500.00 |
| 09/13 | Mortgage Jit Pmt 8007845566 050913 XXXXX6299 Baalouach, Ali | 1,213.08 |
| Total other withdrawals | | $4,638.33 |

Save money by enrolling in the Checking Add-on Package. With the Checking Add-on Package you get free Wells Fargo Exclusive Checks or $5 discounts on other check designs, and no fee cashier's checks, official checks and personal money orders. You'll also receive savings on prescription medications, hotels, car rentals, theme parks, and more. All for just $5 per month. See your banker for more details.

**Daily balance summary**

| Date | $ Balance | Date | $ Balance |
|---|---|---|---|
| 08/12 | 2,539.56 | 09/06 | 4,423.80 |
| 08/16 | 2,989.56 | 09/07 | 1,984.31 |
| 08/17 | 2,570.63 | 09/08 | 3,640.31 |
| 08/25 | 4,370.63 | 09/12 | 4,740.31 |
| 08/29 | 4,490.63 | 09/13 | 4,027.23 |

September 16 through October 17, 2005

**Account Number: 201-6073884**
Page 3 of 4


Other withdrawals-continued

| Date | Description | $ Amount |
|------|-------------|----------|
| 10/05 | Check Crd Purchase 10/04 Net One Intl 407-384-4200 Fl 446024XXXXXX3806 278540005604496 ?MCC=4814 121042882DA | 20.00 |
| 10/06 | Bill Pay Emc Mortgage Cor RECURRINGxxxxxx5832 On 10-06 | 2,439.49 |
| 10/13 | Check Crd Purchase 10/12 Salama Halal Meat San Francisco Ca 446024XXXXXX3806 286503010075645 ?MCC=5411 121042882DA | 1.00 |
| 10/13 | Check Crd Purchase 10/12 Salama Halal Meat San Francisco Ca 446024XXXXXX3806 286503010075646 ?MCC=5411 121042882DA | 1.00 |
| 10/13 | Check Crd Purchase 10/12 Salama Halal Meat San Francisco Ca 446024XXXXXX3806 286503010075647 ?MCC=5411 121042882DA | 1.00 |
| 10/13 | Check Crd Purchase 10/12 Salama Halal Meat San Francisco Ca 446024XXXXXX3806 286503010075648 ?MCC=5411 121042882DA | 0.01 |

| | |
|---|---|
| Total other withdrawals | $3,199.90 |

| | |
|---|---|
| **Total withdrawals** | **$5,163.71** |


**Daily balance summary**

| Date | $ Balance | Date | $ Balance |
|------|-----------|------|-----------|
| 09/15 | 4,027.23 | 09/28 | 4,203.59 |
| 09/16 | 3,576.35 | 09/30 | 4,079.42 |
| 09/19 | 3,526.35 | 10/05 | 4,059.42 |
| 09/20 | 4,315.94 | 10/06 | 1,619.93 |
| 09/21 | 4,285.49 | 10/11 | 3,519.93 |
| 09/27 | 4,233.94 | 10/13 | 1,553.11 |


--------------------------------------------------------------------
**Regular Savings**
Ali Baalouach

**Account Number:  201-6075004**
--------------------------------------------------------------------
**Activity summary**

| | |
|---|---|
| Balance on 09/15 | $2,740.20 |
| Deposits and interest | 1,500.56 |
| Withdrawals | - 0.00 |

--------------------------------------------------------------------

| | |
|---|---|
| Balance on 10/17 | $4,240.76 |


--------------------------------------------------------------------
**Interest you've earned**

| | |
|---|---|
| Average collected balance this period | $3,021.74 |
| Annual percentage yield earned | 0.25% |
| Interest and bonuses paid to date this year | $5.55 |
| Interest paid during this period | $0.56 |
| Interest earned for this statement period | $0.67 |

October 18 through November 15, 2005

**Account Number: 201-6073884**
Page 3 of 4

Other withdrawals-continued

| Date | Description | $ Amount |
|------|-------------|----------|
| 11/01 | Sac Cnty Ubil Util Pymnt 051027 |  |
|  | 005000222369 Ali Baalouach | 69.24 |
| 11/08 | Emc Mtg Corp Speedpay 051108 0010765832 |  |
|  | Ali Baalouach | 2,600.81 |
| 11/08 | Bill Pay Emc Mortgage Cor |  |
|  | RECURRINGxxxxxx5832 On 11-08 | 2,439.49 |
| 11/08 | Mortgage Jit Pmt 8007845566 051108 |  |
|  | XXXXX5420 Baalouach, Ali | 1,239.05 |
| 11/08 | Savings Overdraft Transfer Fee | 10.00 |
| 11/10 | Smud Smud EFT 051107 2761839 Ali |  |
|  | Baalouach | 92.94 |
| 11/10 | Savings Overdraft Transfer Fee | 10.00 |
| 11/15 | Monthly Service Fee | 8.00 |

Total other withdrawals                                   $7,366.27

**Total withdrawals                                        $9,399.08**

**Daily balance summary**

| Date | $ Balance | Date | $ Balance |
|------|-----------|------|-----------|
| 10/17 | 1,553.11 | 11/02 | 4,439.72 |
| 10/18 | 1,134.18 | 11/07 | 7,439.72 |
| 10/20 | 686.72 | 11/08 | 0.00 |
| 10/24 | 2,976.31 | 11/10 | 0.00 |
| 10/31 | 3,695.96 | 11/14 | 3,930.00 |
| 11/01 | 3,626.72 | 11/15 | 6,433.00 |

--------------------------------------------------------------------------
**Regular Savings**
Ali Baalouach

**Account Number:  201-6075004**
------------------------------------------------------------
**Activity summary**
Balance on 10/17                          $4,240.76
Deposits and interest                          0.79
Withdrawals                              - 3,916.38
------------------------------------------------------------
Balance on 11/15                            $325.17

------------------------------------------------------------
**Interest you've earned**
Average collected balance this period     $3,788.57
Annual percentage yield earned                0.25%
Interest and bonuses paid to date this year   $6.34
Interest paid during this period              $0.79
Interest earned for this statement period     $0.75

December 15 through January 17, 2006

**Account Number: 201-6073884**
Page 2 of 3

Is Your Health Insurance Healthy? The Wells Fargo Select Health Insurance
Program brings you a wide variety of health insurance plans for families,
individuals, students, and groups from leading health insurance companies.
Visit www.wellsfargo.com/special keyword: Health Plans

Insurance products available through Wells Fargo Insurance, Inc. or licensed
affiliates and in CA through Wells Fargo Bank, N.A. CA license #0800827
- Not insured by FDIC or any government agency - Not a deposit of or guaranteed
by any bank

--------------------------------------------------------------------------------
**Activity detail**
**Deposits**

| Date | Description | Amount |
|------|-------------|--------|
| 01/03 | Deposit | $1,525.00 |
| 01/06 | Deposit | 1,503.25 |
| Total deposits | | $3,028.25 |

**Withdrawals**
Checks

| Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|----------|--------|------|----------|
| 431 | 12/20 | 1,963.81 | 433* | 01/06 | 186.99 |
| Total checks | | | | | $2,150.80 |

**\* Gap in check sequence**

***Other withdrawals***

| Date | Description | $ Amount |
|------|-------------|----------|
| 12/16 | T.M.C.C Loan Pmt 051216 01961308920001 Baalouach Ali | 418.93 |
| 12/29 | Check Crd Purchase 12/27 Blockbuster Video #687 San Francisco Ca 446024XXXXXX3806 363540007344497 ?MCC=7841 121042882DA | 30.35 |
| 01/03 | Sac Cnty Ubil Util Pymnt 051229 005000222369 Ali Baalouach | 70.11 |
| 01/06 | Withdrawal Made In A Branch/Store | 42.16 |
| 01/09 | Bill Pay Emc Mortgage Cor On-Line xxxxxx5832 On 01-09 | 2,439.49 |
| 01/09 | Bill Pay Chase Home Finan On-Line xxxxxx4384 On 01-09 | 1,943.81 |
| 01/09 | Bill Pay Greenpoint Mortg On-Line xxxxxx1705 On 01-09 | 1,200.00 |
| 01/09 | Blue Cross Of Ca Blue Cross 060105 00953Cxxxxx Ali Baalouach | 69.00 |
| Total other withdrawals | | $6,213.85 |
| **Total withdrawals** | | **$8,364.65** |

**Daily balance summary**

| Date | $ Balance | Date | $ Balance |
|------|-----------|------|-----------|
| 12/14 | 7,124.19 | 01/03 | 6,165.99 |
| 12/16 | 6,705.26 | 01/06 | 7,440.09 |
| 12/20 | 4,741.45 | 01/09 | 1,787.79 |
| 12/29 | 4,711.10 | | |

## Activity detail
### Deposits

| Date | Description | $ Amount |
|------|-------------|----------|
| 01/19 | Deposit | 3,088.19 |
| 01/23 | Deposit | 2,289.59 |
| 02/02 | Deposit | 1,000.00 |
| 02/07 | Deposit | 1,500.00 |
| 02/13 | Deposit | 1,500.00 |
| **Total deposits** | | **$9,377.78** |

## Withdrawals
### Checks

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|----------|--------|------|----------|--------|------|----------|
| 434 | 01/30 | 4,052.09 | 436* | 02/13 | 57.70 | 437 | 02/09 | 42.16 |
| Total checks | | | | | | | | $4,151.95 |

\* Gap in Check Sequence

  *Check converted to an electronic format by your payee or designated representative.  Converted checks cannot be returned, copied or imaged.  See section below for item details.*

### Converted check information

| Check | Description | | |
|-------|-------------|---|---|
| 437 | Wellsfargo Card  Checkpaymt  060209 00437 | 90154117282913 | |

### Other withdrawals

| Date | Description | $ Amount |
|------|-------------|----------|
| 01/18 | T.M.C.C  Loan Pmt  060116 01961308920001 Baalouach  Ali | 418.93 |
| 01/25 | Cal–Am Wtr Co Payment  060124 0406337 Ali Baalouach | 57.70 |
| 01/30 | Check Crd Purchase  01/27 Blockbuster Video #687 San Francisco  Ca 446024XXXXXX3806 030640004377870 ?MCC=7841  121042882DA | 30.35 |
| | Bill Pay Service Fee On  02–01 | 9.95 |
| 02/06 | Blue Cross Of Ca Blue Cross  060202 00953Cxxxxx Ali Baalouach | 69.00 |
| 02/13 | Bill Pay Emc Mortgage Cor On–Line xxxxxx5832 On 02–13 | 2,439.49 |
| 02/13 | Bill Pay Litton Loans Loa On–Line xxxxxx5384 On 02–13 | 1,084.79 |
| 02/13 | Bill Pay Greenpoint  Mortg On–Line xxxxxx1705 On 02–13 | 600.00 |
| Total other withdrawals | | $4,710.21 |
| **Total withdrawals** | | **$8,862.16** |

*Continued  on next page*

March 15 through April 14, 2006
Account Number: 201–6073884
Page 3 of 6

## Withdrawals

*Checks*

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|----------|--------|------|----------|--------|------|----------|
| 440 | 03/15 | 76.68 | 446* | 04/03 | 50.78 | 448* | 04/03 | 150.26 |

| | | | | | | Total checks | | $277.72 |
|--|--|--|--|--|--|--|--|--|

*\* Gap in Check Sequence*

   *Check converted to an electronic format by your payee or designated representative.  Converted checks cannot be returned, copied or imaged.  See section below for item details.*

*Converted check information*

| Check | Description | | |
|-------|-------------|--|--|
| 440 | Allied Waste Svc Checkpaymt  060314 440 | 203160222369000000000 | |

*Other withdrawals*

| Date | Description | $ Amount |
|------|-------------|----------|
| 03/16 | T.M.C.C  Loan  Pmt  060316 01961308920001 Baalouach  Ali | 418.93 |
| 03/17 | Mortgage  Payment  8002883212 060317 1127037646 Baalouach,  Ali | 2,992.55 |
| 03/17 | Mortgage  Jit Pmt  8002823451 060317 XXXXX2519  Baalouach,  Ali | 1,315.73 |
| 03/17 | Mortgage  Payment  8002883212 060317 1127037647 Baalouach,  Ali | 1,154.03 |
| 03/17 | Mortgage  Jit Pmt  8002823451 060317 XXXXX2520  Baalouach,  Ali | 314.20 |
| 03/21 | Emc Mtg Corp  Speedpay  060321 0010765832 Ali Baalouach | 2,449.44 |
| 03/29 | Check Crd Purchase  03/27 Blockbuster  Video #687 San Francisco  Ca 446024XXXXXX3806  088640007814843 ?MCC=7841   121042882DA | 30.35 |
| 04/03 | Bill Pay Service Fee On  04–01 | 9.95 |
| 04/06 | Blue Cross Of Ca Blue Cross 060405 00953Cxxxxx Ali Baalouach | 69.00 |
| 04/14 | Monthly  Service Fee | 8.00 |

| | Total other  withdrawals | $8,762.18 |
|--|--|--|

| **Total withdrawals** | | **$9,039.90** |
|--|--|--|

DIRECT DEPOSIT ADVANCE SERVICE AGREEMENT –CHANGE IN TERMS EFFECTIVE IMMEDIATELY –additional provisions relating to cancellation and availability of an advance, credit limit and APR.

ADVANCES Section: You may cancel an advance at no cost on the same business day as the advance is made (or succeeding business day if the advance is taken on a non–business day) by calling Wells Fargo Phone Bank prior to the established cut–off time for the way you took the advance that day. You may only cancel one advance per day.

AVAILABILITY OF ADVANCES Section: If your consumer checking account is overdrawn for up to seven consecutive business days you will not have access to the Direct Deposit Advance service until the overdraft has been paid, the account balance has remained positive for up to six consecutive business days, and all other eligibility criteria are met.

CREDIT LIMIT Section: The bank reserves the right, at any time, and upon notice when required by applicable law, to modify your credit limit, including reducing the credit limit to $0, based on your use of the Direct Deposit Advance service, your handling of the funds in your checking account and other factors, at the bank's sole discretion.

FEES Section: THE ANNUAL PERCENTAGE RATE (APR) IS 120%.

*Continued  on next page*

## Withdrawals

### Checks

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|----------|--------|------|----------|--------|------|----------|
| 449 | 04/21 | 41.30 | | | | | | |

| | | |
|---|---|---|
| Total checks | | $41.30 |

*Check converted to an electronic format by your payee or designated representative. Converted checks cannot be returned, copied or imaged. See section below for item details.*

### Converted check information

| Check | Description | | |
|-------|-------------|---|---|
| 449 | Allied Waste Svc Checkpaymt 060420 449 | 20316022369000000000 | |

### Other withdrawals

| Date | Description | $ Amount |
|------|-------------|----------|
| 04/18 | Emc Mtg Corp Speedpay 060418 0010765832 Ali Baalouach | 2,449.44 |
| 04/18 | Mortgage Jit Pmt 8007845566 060418 XXXXX6594 Baalouach, Ali | 680.65 |
| 04/18 | T.M.C.C Loan Pmt 060416 01961308920001 Baalouach Ali | 418.93 |
| 04/19 | Mortgage Payment 8002883212 060419 1127037646 Baalouach, Ali | 2,846.00 |
| 04/19 | World Savings Mortg Pmt 060419 XXXXX0109 Ali, Baalouach | 1,303.73 |
| 04/19 | Mortgage Payment 8002883212 060419 1127037647 Baalouach, Ali | 1,099.79 |
| 04/20 | Overdraft Fee | 22.00 |
| 04/21 | World Savings Mortg Pmt 060421 XXXXX5679 Baalouach, Ali | 331.28 |
| 04/24 | Overdraft Fee | 22.00 |
| 05/01 | Bill Pay Service Fee On 05–01 | 9.95 |
| 05/02 | Sac Cnty Ubil Util Pymnt 060427 005000222369 Ali Baalouach | 70.11 |
| 05/05 | Blue Cross Of Ca Blue Cross 060504 00953Cxxxxx Ali Baalouach | 69.00 |
| 05/12 | Emc Mtg Corp Speedpay 060512 0010765832 Ali Baalouach | 2,632.40 |
| 05/12 | Monthly Service Fee | 8.00 |

| | |
|---|---|
| Total other withdrawals | $11,963.28 |

| | |
|---|---|
| **Total withdrawals** | **$12,004.58** |

Keep things convenient with Wells Fargo Online Statements. Whether you're at home or at school, moving or on vacation, Online Statements provide you with the same information as on your paper statements, and are accessible anywhere, 24/7. More secure than mail, Online Statements never get lost or misdirected to a previous address and can be securely stored on disk. Plus, they reduce clutter and paper usage, which helps protect the environment. With all these advantages, who needs paper? Sign up for Online Statements and view them at wellsfargo.com.

## Daily balance summary

| Date | $ Balance | Date | $ Balance | Date | $ Balance |
|------|-----------|------|-----------|------|-----------|
| 04/14 | 8,180.31 | 04/20 | 359.77 | 05/01 | 255.24 |
| 04/18 | 4,631.29 | 04/21 | −12.81 | 05/02 | 185.13 |
| 04/19 | −618.23 | 04/24 | 265.19 | 05/04 | 885.13 |

*Continued on next page*

Before you leave on your next vacation, don't forget to get American Express Travelers Cheques. For more information and to purchase your Travelers Cheques talk to your local banker or sign on to Wells Fargo Online Banking at wellsfargo.com and select Account Services/Order Travelers Cheques.

## Activity detail

### Deposits

| Date | Description | $ Amount |
|---|---|---|
| 06/15 | Deposit | 1,100.00 |
| 06/16 | Deposit | 650.00 |
| 06/19 | Deposit | 2,500.00 |
| 06/28 | Deposit | 4,000.00 |
| 06/29 | Deposit Made In A Branch/Store | 2,000.00 |
| 07/05 | Deposit | 1,380.00 |
| 07/11 | Deposit | 1,877.10 |
| 07/13 | Deposit | 250.00 |
| 07/14 | Deposit | 3,253.52 |
| 07/17 | Deposit | 350.00 |
| **Total deposits** | | **$17,360.62** |

### Withdrawals

#### Checks

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|---|---|---|---|---|---|---|---|---|
| 5800 | 06/30 | 4,430.57 | | | | | | |
| Total checks | | | | | | | | $4,430.57 |

#### Other withdrawals

| Date | Description | $ Amount |
|---|---|---|
| 06/16 | T.M.C.C Loan Pmt 060616 01961308920001 Baalouach Ali | 418.93 |
| 06/20 | Emc Mtg Corp Speedpay 060620 0010765832 Ali Baalouach | 2,632.40 |
| 06/20 | World Savings Mortg Pmt 060620 XXXXX8081 Ali, Baalouach | 1,303.73 |
| 06/20 | Mortgage Payment 8002883212 060620 1127037647 Baalouach, Ali | 1,208.27 |
| 06/20 | Greenpoint Mortg Mortg Pmt 060620 XXXXX0028 Baalouach, Ali | 779.26 |
| 06/20 | World Savings Mortg Pmt 060620 XXXXX8082 Baalouach, Ali | 354.96 |
| 06/21 | Mortgage Payment 8002883212 060621 1127037646 Baalouach, Ali | 3,129.10 |
| 06/23 | Dr-Right Of Setoff To Acct 2016-075004 | 5.16 |

*Continued on next page*

July 18 through August 14, 2006
Account Number: 201-6073884
Page 2 of 5

Someday, you'll have more time to work in your garden.

Today, free up some time by having your paycheck automatically deposited into your account with Wells Fargo Direct Deposit. It's free, secure and you'll have immediate access to your funds. To sign up, log onto wellsfargo.com and choose "Set Up Direct Deposit" or visit your local store.

## Activity detail

### Deposits

| Date | Description | $ Amount |
|------|-------------|---------:|
| 07/20 | Deposit | 600.00 |
| 07/24 | Deposit | 700.00 |
| 08/03 | Deposit | 1,200.00 |
| 08/04 | Deposit | 430.00 |
| 08/07 | Deposit Made In A Branch/Store | 1,500.00 |
| **Total deposits** | | **$4,430.00** |

## Withdrawals

### Checks

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|---------:|--------|------|---------:|--------|------|---------:|
| 5801 | 07/24 | 3,532.58 | | | | | | |
| Total checks | | | | | | | | $3,532.58 |

### Other withdrawals

| Date | Description | $ Amount |
|------|-------------|---------:|
| 07/18 | World Savings Mortg Pmt 060718 XXXXX3256 Ali, Baalouach | 1,303.73 |
| 07/18 | Greenpoint Mortg Mortg Pmt 060718 XXXXX7993 Baalouach, Ali | 693.08 |
| 07/18 | T.M.C.C Loan Pmt 060716 01961308920001 Baalouach Ali | 418.93 |
| 07/18 | World Savings Mortg Pmt 060718 XXXXX3257 Ali, Baalouach | 385.25 |
| 07/25 | Mortgage Payment 8002883212 060725 1127037646 Baalouach, Ali | 2,987.55 |
| 07/25 | Mortgage Payment 8002883212 060725 1127037647 Baalouach, Ali | 1,154.03 |
| 07/26 | Overdraft Fee | 33.00 |
| 07/26 | Cal-Am Wtr Co Payment 060725 0406337 Ali Baalouach | 8.00 |
| 07/27 | Overdraft Fee | 33.00 |
| 07/28 | Continuous OD Level 2 Charge | 5.00 |
| 07/31 | Continuous OD Level 2 Charge | 5.00 |
| 08/01 | Continuous OD Level 2 Charge | 5.00 |

*Continued on next page*

Case 3:07-cv-05433-JSW    Document 25    Filed 05/26/2008    Page 29 of 61

---

## Activity detail
### Deposits

| Date | Description | $ Amount |
|------|-------------|----------|
| 08/16 | Deposit | 5,000.00 |
| 08/18 | Deposit | 2,000.00 |
| 08/25 | Deposit | 2,603.52 |
| 09/05 | Deposit | 1,400.00 |
| 09/11 | Deposit | 1,500.00 |
| 09/12 | Deposit | 1,100.00 |
| **Total deposits** | | **$13,603.52** |

## Withdrawals
### *Other withdrawals*

| Date | Description | $ Amount |
|------|-------------|----------|
| 08/16 | T.M.C.C Loan Pmt 060816 01961308920001 Baalouach Ali | 418.93 |
| 08/17 | Emc Mtg Corp Speedpay 060817 0010765832 Ali Baalouach | 2,622.45 |
| 08/18 | Mortgage Payment 8002883212 060818 1127037646 Baalouach, Ali | 2,841.00 |
| 08/18 | World Savings Mortg Pmt 060818 XXXXX3612 Ali, Baalouach | 1,303.73 |
| 08/18 | Mortgage Payment 8002883212 060818 1127037647 Baalouach, Ali | 1,094.79 |
| 08/18 | World Savings Mortg Pmt 060818 XXXXX3613 Ali, Baalouach | 367.48 |
| 08/25 | Dr−Right Of Setoff To Acct 2016−075004 | 6.00 |
| 08/31 | Greenpoint Mortg Mortg Pmt 060831 XXXXX7293 Baalouach, Ali | 776.23 |
| 09/05 | Sac Cnty Ubil Util Pymnt 060831 005000222369 Ali Baalouach | 73.18 |
| 09/06 | Blue Cross Of Ca Blue Cross 060905 00953Cxxxxx Ali Baalouach | 86.00 |
| Total other withdrawals | | $9,589.79 |

### Daily balance summary

| Date | $ Balance | Date | $ Balance | Date | $ Balance |
|------|-----------|------|-----------|------|-----------|
| 08/14 | 2,445.64 | 08/25 | 3,394.78 | 09/11 | 5,359.37 |
| 08/16 | 7,026.71 | 08/31 | 2,618.55 | 09/12 | 6,459.37 |
| 08/17 | 4,404.26 | 09/05 | 3,945.37 | | |
| 08/18 | 797.26 | 09/06 | 3,859.37 | | |

---

*Continued on next page*

## Custom Management Checking

Ali Baalouach

**Account Number:** 201–6073884

## Activity summary

| | |
|---|---|
| Balance on 09/15 | $6,459.37 |
| Deposits | 8,818.04 |
| Withdrawals | −9,381.14 |
| Balance on 10/16 | $5,896.27 |

As a thank you for being a valued Wells Fargo customer, your Custom Management Checking Package now comes with FREE Bill Pay. Visit wellsfargo.com for additional details.

## Activity detail
### Deposits

| Date | Description | $ Amount |
|---|---|---|
| 09/26 | Deposit | 2,603.52 |
| 09/29 | Deposit | 800.00 |
| 10/03 | Deposit | 1,300.00 |
| 10/12 | Deposit | 1,511.00 |
| 10/16 | Deposit Made In A Branch/Store | 2,603.52 |
| **Total deposits** | | **$8,818.04** |

## Withdrawals
### Other withdrawals

| Date | Description | $ Amount |
|---|---|---|
| 09/18 | T.M.C.C Loan Pmt 060916 01961308920001 Baalouach Ali | 418.93 |
| 09/26 | Cal–Am Wtr Co Payment 060925 0406337 Ali Baalouach | 52.34 |
| 09/27 | Emc Mtg Corp Speedpay 060927 0010765832 Ali Baalouach | 2,957.10 |
| 09/27 | World Savings Mortg Pmt 060927 XXXXX3460 Ali, Baalouach | 1,303.73 |
| 09/27 | World Savings Mortg Pmt 060927 XXXXX3461 Ali, Baalouach | 386.46 |
| 09/28 | Mortgage Payment 8002883212 060928 1127037647 Baalouach, Ali | 1,159.03 |
| 09/29 | Mortgage Payment 8002883212 060929 1127037646 Baalouach, Ali | 2,992.55 |
| 10/05 | Auto Transfer To −000002016075004 | 25.00 |
| 10/05 | Blue Cross Of Ca Blue Cross 061003 00953Cxxxxx Ali Baalouach | 86.00 |
| Total other withdrawals | | $9,381.14 |

*Continued on next page*

December 15, 2006 through January 16, 2007
Account Number: 201–6073884
Page 2 of 3

---

## Activity detail
### Deposits

| Date | Description | $ Amount |
|------|-------------|---------|
| 12/15 | Deposit Made In A Branch/Store | 3,983.44 |
| 12/27 | Deposit Made In A Branch/Store | 1,500.00 |
| 01/08 | Deposit | 2,000.00 |
| 01/12 | Deposit | 1,000.00 |
| 01/16 | Deposit | 515.00 |

**Total deposits** **$8,998.44**

## Withdrawals
### Other withdrawals

| Date | Description | $ Amount |
|------|-------------|---------|
| 12/18 | T.M.C.C Loan Pmt 061216 01961308920001 Baalouach Ali | 418.93 |
| 12/20 | Mortgage Payment 8002883212 061220 1127037646 Baalouach, Ali | 5,823.55 |
| 12/20 | World Savings Mortg Pmt 061220 XXXXX1525 Ali, Baalouach | 2,660.68 |
| 12/20 | Mortgage Payment 8002883212 061220 1127037647 Baalouach, Ali | 2,243.82 |
| 12/20 | World Savings Mortg Pmt 061220 XXXXX1526 Ali, Baalouach | 788.80 |
| 12/22 | Online Transfer Ref #IBE7WW9Dqw To Custom Management Chkng Mortgage Payment For Cayuga | 2,436.90 |
| 12/26 | Online Transfer Ref #IBEQF5V2Bm To Custom Management Chkng 1992267Xxx On 12/23/06 | 35,000.00 |
| 12/27 | Withdrawal Made In A Branch/Store | 4,000.00 |
| 01/04 | Blue Cross Of Ca Blue Cross 070103 00953Cxxxxx Ali Baalouach | 86.00 |
| 01/09 | Sac Cnty Ubil Util Pymnt 070104 005000222369 Ali Baalouach | 73.18 |
| 01/16 | Monthly Service Fee | 8.00 |

Total other withdrawals  $53,539.86

### Daily balance summary

| Date | $ Balance | Date | $ Balance | Date | $ Balance |
|------|-----------|------|-----------|------|-----------|
| 12/14 | 72,665.35 | 12/22 | 62,276.11 | 01/08 | 26,690.11 |
| 12/15 | 76,648.79 | 12/26 | 27,276.11 | 01/09 | 26,616.93 |
| 12/18 | 76,229.86 | 12/27 | 24,776.11 | 01/12 | 27,616.93 |
| 12/20 | 64,713.01 | 01/04 | 24,690.11 | 01/16 | 28,123.93 |

---

*Thank you for banking with Wells Fargo.*

---

## Activity detail
### Deposits

| Date | Description | $ Amount |
|------|-------------|---------:|
| 02/13 | Deposit | 1,700.00 |
| 02/14 | Deposit | 452.96 |
| **Total deposits** | | **$2,152.96** |

## Withdrawals
### Other withdrawals

| Date | Description | $ Amount |
|------|-------------|---------:|
| 01/17 | Online Transfer Ref #IBETB8Nggh  To Custom  Management  Chkng  1992267Xxx On 01/17/07 | 5,219.52 |
| 01/17 | T.M.C.C  Loan  Pmt  070116 01961308920001 Baalouach  Ali | 418.93 |
| 01/22 | Online Transfer Ref #IBEFQ2Sqxw  To Custom  Management  Chkng Insurance  For  U  St | 406.00 |
| 01/23 | Cal–Am Wtr  Co  Payment  070122 0406337 Ali  Baalouach | 52.34 |
| 01/24 | Online Transfer Ref #IBE7WXZ3Nk  To  Custom  Management  Chkng  Payments  On 1 St And 2 Months  2Nd  68 Cayug | 4,897.06 |
| 02/05 | Blue Cross Of Ca  Blue  Cross  070202 00953Cxxxxx Ali  Baalouach | 86.00 |
| 02/14 | Monthly  Service  Fee | 8.00 |
| Total other withdrawals | | $11,087.85 |

### Daily  balance summary

| Date | $ Balance | Date | $ Balance | Date | $ Balance |
|------|----------:|------|----------:|------|----------:|
| 01/16 | 28,123.93 | 01/23 | 22,027.14 | 02/13 | 18,744.08 |
| 01/17 | 22,485.48 | 01/24 | 17,130.08 | 02/14 | 19,189.04 |
| 01/22 | 22,079.48 | 02/05 | 17,044.08 | | |

---

*Thank you for banking with Wells Fargo.*

---

## Activity detail

### Deposits

| Date | Description | $ Amount |
|------|-------------|---------:|
| 02/21 | Deposit | 315.00 |
| 03/13 | Deposit | 2,800.00 |
| 03/14 | Online Transfer Ref #IBEJM7DKP3  From Checking Return Money | 35,000.00 |
| **Total deposits** | | **$38,115.00** |

## Withdrawals

### *Other withdrawals*

| Date | Description | $ Amount |
|------|-------------|---------:|
| 02/16 | World Savings Mortg Pmt 070216 XXXXX9775 Ali, Baalouach | 1,315.73 |
| 02/16 | World Savings Mortg Pmt 070216 XXXXX9776 Ali, Baalouach | 823.11 |
| 02/16 | T.M.C.C Loan Pmt 070216 01961308920001 Baalouach Ali | 418.93 |
| 02/21 | Withdrawal Made In A Branch/Store | 2,000.00 |
| 02/23 | Countrywide Mortgage Feb 07 XXXXX3032 20070222122715860P | 2,436.90 |
| 02/23 | Countrywide Mortgage Feb 07 XXXXX2609 20070222122153764P | 1,257.65 |
| 02/23 | Countrywide Mortgage Feb 07 XXXXX2609 20070222122153764P | 9.00 |
| 02/23 | Countrywide Mortgage Feb 07 XXXXX3032 20070222122715860P | 9.00 |
| 03/02 | Mortgage Payment 8002883212 070302 1127037646 Baalouach, Ali | 2,845.25 |
| 03/02 | Mortgage Payment 8002883212 070302 1127037647 Baalouach Ali | 2,189.58 |
| 03/06 | Blue Cross Of Ca Blue Cross 070305 00953Dxxxxx Ali Baalouach | 121.00 |
| 03/06 | Sac Cnty Ubil Util Pymnt 070301 005000222369 Ali Baalouach | 73.18 |
| Total other withdrawals | | $13,499.33 |

### Daily balance summary

| Date | $ Balance | Date | $ Balance | Date | $ Balance |
|------|----------:|------|----------:|------|----------:|
| 02/14 | 19,189.04 | 02/23 | 11,233.72 | 03/13 | 8,804.71 |
| 02/16 | 16,631.27 | 03/02 | 6,198.89 | 03/14 | 43,804.71 |
| 02/21 | 14,946.27 | 03/06 | 6,004.71 | | |

---

*Thank you for banking with Wells Fargo.*

March 15 through April 13, 2007
Account Number: 201−6073884
Page 2 of 4

---

## Activity detail
### Deposits

| Date | Description | $ Amount |
|------|-------------|---------:|
| 03/19 | Deposit Made In A Branch/Store | 1,665.00 |
| 03/29 | Deposit | 1,133.46 |
| 04/09 | Deposit | 3,600.00 |
| **Total deposits** | | **$6,398.46** |

## Withdrawals
### Checks

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|---------:|--------|------|---------:|--------|------|---------:|
| 451 | 04/02 | 48.80 | | | | | | |
| Total checks | | | | | | | | $48.80 |

### Other withdrawals

| Date | Description | $ Amount |
|------|-------------|---------:|
| 03/16 | Withdrawal Made In A Branch/Store | 6,000.00 |
| 03/16 | T.M.C.C Loan Pmt 070316 01961308920001 Baalouach Ali | 418.93 |
| 03/20 | Withdrawal Made In A Branch/Store | 4,000.00 |
| 03/20 | Countrywide Mortgage Mar 07 XXXXX3032 20070319134238451P | 2,436.90 |
| 03/20 | Countrywide Mortgage Mar 07 XXXXX2609 20070319134804586P | 1,135.94 |
| 03/20 | Countrywide Mortgage Mar 07 XXXXX2609 20070319134804586P | 9.00 |
| 03/20 | Countrywide Mortgage Mar 07 XXXXX3032 20070319134238451P | 9.00 |
| 03/22 | Withdrawal Made In A Branch/Store | 4,000.00 |
| 03/22 | World Savings Mortg Pmt 032007 0041818402 Ali Baalouach | 1,383.55 |
| 03/22 | World Savings Mortg Pmt 032007 0041818600 Ali Baalouach | 496.82 |
| 03/27 | Cal−Am Wtr Co Payment 070326 0406337 Ali Baalouach | 53.87 |
| 03/28 | Mortgage Payment 8002883212 070328 1127037646 Baalouach, Ali | 2,845.25 |
| 03/28 | Mortgage Payment 8002883212 070328 1127037647 Baalouach, Ali | 1,104.79 |
| 04/04 | Blue Cross Of Ca Blue Cross 070403 00953Dxxxxx Ali Baalouach | 121.00 |
| 04/12 | Withdrawal Made In A Branch/Store | 533.74 |
| 04/12 | Withdrawal Made In A Branch/Store | 100.00 |
| Total other withdrawals | | $24,648.79 |
| **Total withdrawals** | | **$24,697.59** |

### Daily balance summary

| Date | $ Balance | Date | $ Balance | Date | $ Balance |
|------|----------:|------|----------:|------|----------:|
| 03/14 | 43,804.71 | 03/19 | 39,050.78 | 03/22 | 25,579.57 |
| 03/16 | 37,385.78 | 03/20 | 31,459.94 | 03/27 | 25,525.70 |

*Continued on next page*

April 14 through May 14, 2007
Account Number: 201–6073884
Page 2 of 3

---

## Activity detail
### Deposits

| Date | Description | $ Amount |
|---|---|---|
| 04/25 | Deposit | 1,394.00 |
| 05/01 | Deposit | 5,559.00 |
| 05/11 | Deposit | 1,500.00 |
| **Total deposits** | | **$8,453.00** |

## Withdrawals
### Checks

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|---|---|---|---|---|---|---|---|---|
| 452 | 04/20 | 200.00 | 455 | 04/20 | 607.00 | 460* | 05/08 | 500.00 |
| 453 | 04/17 | 2,000.00 | 456 | 04/23 | 900.00 | | | |
| 454 | 04/30 | 750.00 | 458* | 04/30 | 140.98 | | | |
| Total checks | | | | | | | | $5,097.98 |

*Gap in Check Sequence*

### Other withdrawals

| Date | Description | $ Amount |
|---|---|---|
| 04/18 | T.M.C.C Loan Pmt 070416 01961308920001 Baalouach Ali | 418.93 |
| 05/01 | Bill Pay Service Fee On 05–01 | 9.95 |
| 05/01 | Withdrawal Made In A Branch/Store | 1,500.00 |
| 05/01 | Sac Cnty Ubil Util Pymnt 070426 005000222369 Ali Baalouach | 73.18 |
| 05/02 | Mortgage Payment 8002883212 070502 1127037646 Baalouach, Ali | 4,349.42 |
| 05/02 | World Savings Mortg Pmt 070502 XXXXX7511 Ali, Baalouach | 1,395.55 |
| 05/02 | Countrywide Mortgage May 07 XXXXX2609 20070430203244832P | 1,257.65 |
| 05/02 | Mortgage Payment 8002883212 070502 1127037647 Baalouach, Ali | 1,094.79 |
| 05/02 | World Savings Mortg Pmt 070502 XXXXX7512 Ali, Baalouach | 388.08 |
| 05/02 | Countrywide Mortgage May 07 XXXXX2609 20070430203244832P | 9.00 |
| 05/04 | Blue Cross Of Ca Blue Cross 070502 00953Dxxxxx Ali Baalouach | 121.00 |
| Total other withdrawals | | $10,617.55 |
| **Total withdrawals** | | **$15,715.53** |

### Daily balance summary

| Date | $ Balance | Date | $ Balance | Date | $ Balance |
|---|---|---|---|---|---|
| 04/13 | 25,505.58 | 04/23 | 21,379.65 | 05/02 | 17,364.05 |
| 04/17 | 23,505.58 | 04/25 | 22,773.65 | 05/04 | 17,243.05 |
| 04/18 | 23,086.65 | 04/30 | 21,882.67 | 05/08 | 16,743.05 |
| 04/20 | 22,279.65 | 05/01 | 25,858.54 | 05/11 | 18,243.05 |

*Thank you for banking with Wells Fargo.*

| 00307 | 11-24 |
|---|---|
| Office AU # | 1210(8) |

**OFFICIAL CHECK**

SERIAL #:  0030707397

ACCOUNT#:  4861-505345

Purchaser:        ALI BAALOUACH
Purchaser Account:  2016073884
Operator I.D.:      cu011638        cu011097

PAY TO THE ORDER OF:        ***COUNTRY WIDE***
                            ***LOAN# 146653032***

June 27, 2007

***Eight thousand dollars and no cents***

**\*\*$8,000.00\*\***

**WELLS FARGO & COMPANY ISSUER**
420 MONTGOMERY STREET
SAN FRANCISCO, CA 94163
PAYABLE AT WELLS FARGO BANK, N.A.
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER--IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $  8,000.00

**NON-NEGOTIABLE**

**Purchaser Copy**

FB004      MEDS

June 15 through July 16, 2007
Account Number: 201-6073884
Page 2 of 3

---

## Activity detail
### Deposits

| Date | Description | $ Amount |
|------|-------------|---------:|
| 06/22 | Deposit | 100.00 |
| 06/27 | Deposit | 1,000.00 |
| 06/27 | Online Transfer Ref #IBE5289P2M From Business Card XXXXXXXXXXXX5612   On 06/27/07 | 5,000.00 |
| 06/28 | Deposit | 250.00 |
| 07/02 | Deposit | 1,300.00 |
| 07/05 | Deposit | 400.00 |
| 07/13 | Deposit | 4,130.86 |
| **Total deposits** | | **$12,180.86** |

### Withdrawals
#### Checks

| Number | Date | $ Amount | Number | Date | $ Amount | Number | Date | $ Amount |
|--------|------|---------:|--------|------|---------:|--------|------|---------:|
| 468 | 07/03 | 300.00 | 469 | 07/11 | 275.00 | | | |
| Total checks | | | | | | | | $575.00 |

#### Other withdrawals

| Date | Description | $ Amount |
|------|-------------|---------:|
| 06/18 | T.M.C.C Loan Pmt 070616 01961308920001 Baalouach Ali | 418.93 |
| 06/19 | Mortgage Payment EFT 070619 1127037646 Baalouach, Ali | 8,698.84 |
| 06/19 | World Savings Mortg Pmt 070619 XXXXX4400 Ali, Baalouach | 2,809.95 |
| 06/19 | Mortgage Payment EFT 070619 1127037647 Baalouach, Ali | 2,382.30 |
| 06/19 | World Savings Mortg Pmt 070619 XXXXX4401 Ali, Baalouach | 818.46 |
| 06/27 | Withdrawal Made In A Branch/Store | 8,000.00 |
| 06/28 | Countrywide Mortgage Jun 07 XXXXX2609 20070627131817258P | 2,537.61 |
| 06/28 | Countrywide Mortgage Jun 07 XXXXX2609 20070627131817258P | 5.00 |
| 07/03 | Sac Cnty Ubil Util Pymnt 070628 005000222369 Ali Baalouach | 74.36 |
| 07/06 | Blue Cross Of Ca Blue Cross 070703 00953Dxxxxx Ali Baalouach | 121.00 |
| Total other withdrawals | | $25,866.45 |
| **Total withdrawals** | | **$26,441.45** |

### Daily balance summary

| Date | $ Balance | Date | $ Balance | Date | $ Balance |
|------|----------:|------|----------:|------|----------:|
| 06/14 | 20,543.11 | 06/27 | 3,514.63 | 07/05 | 2,547.66 |
| 06/18 | 20,124.18 | 06/28 | 1,222.02 | 07/06 | 2,426.66 |
| 06/19 | 5,414.63 | 07/02 | 2,522.02 | 07/11 | 2,151.66 |
| 06/22 | 5,514.63 | 07/03 | 2,147.66 | 07/13 | 6,282.52 |

*Thank you for banking with Wells Fargo.*

# EXHIBIT D

```
       VOL  BLOCK  LOT   SEQ        YEAR      BILL     CHANGE NUMBER   DATE   TYPE
       40   6752   021   01         06-07    174287
                                             INSTALLMENT 2 DLQ NOTICE 05-30-07
   ASSESSEE   BAALOUACH ALI                   SITUS   0068   CAYUGA              AV

   TAX DEFAULTED          06-30-07

   ASSESSED LAND             504,900
            IMP-STR          336,600             FULL VALUE              841,500
            IMP-FIX
            PP-OTHER                             R.E. TAX              9,551.00
   EXEMPTION:H.O.              7,000             LESS H.O.                79.44
            OTHER                                NET R.E. TAX          9,471.56
   NET R.E. VALUE            834,500
                                                29 RENT BOARD             22.00
                                                89 SFUSD FACIL.           32.20
   TAX AMOUNT          4,762.88        4,762.88
   PENALTY                                476.28
   COST                                    10.00
   TOTAL               4,762.88        5,249.16

   DATE PAID           11-03-06
   BATCH NUMBER          0295                   TOTAL TAX             9,525.76
   TDA54P 32: INQUIRY COMPLETED. PRIOR TAX & SPECIAL ASSESSMENTS     05-13-08
```

CITY AND COUNTY OF SAN FRANCISCO SECURED TAX ROLL — THIS DOCUMENT IS A TRUE COPY OF THE INSIDE OF MICROFICHE JACKET.

ROLL AS OF 08/18/06        2005-06        TAX RATE IS $1.1400/$100 A.V.    ASSESSED VALUE IS 100% OF FULL VALUE        PAGE 35,308

| PARCEL IDENTIFICATION MAILING ADDRESS | REMARKS | ASSESSED VALUE AND DETAIL OF EXEMPTIONS | TOTAL TAXES AND SPECIAL ASSESSMENTS | FIRST INSTALLMENT | SECOND INSTALLMENT |
|---|---|---|---|---|---|
| VOL. BLOCK LOT SEQ  BILL NUMBER<br>40  6752  004  01        172864<br>LOCATION OF PROPERTY<br>118 ROUSSEAU ST<br>ASSESSEE 12:01 A.M. MARCH 1<br>RIVAS YOLANDA M<br><br>RIVAS YOLANDA M<br>118 ROUSSEAU ST<br>SAN FRANCISCO CA    94112 | | LAND    124,684<br>STR     83,120<br>RX<br>PERS<br>  LESS EXEMPTIONS<br>11     7,000<br><br>NET ASSESSED VALUE<br>200,804<br>FV    207,804 | RE  2,289.16<br>89     32.20<br><br><br><br><br>2,321.36<br>TOTAL TAX | 1,160.68<br><br><br>TOTAL AMOUNT<br>1,160.68<br><br>PAID 12-06-05<br>BATCH  0423 | 1,160.68<br><br><br>TOTAL AMOUNT<br>1,160.68<br><br>PAID 04-06-06<br>BATCH  0697 |
| VOL. BLOCK LOT SEQ  BILL NUMBER<br>40  6752  021  01        172865<br>LOCATION OF PROPERTY<br>68 CAYUGA AV<br>ASSESSEE 12:01 A.M. MARCH 1<br>CARAZO-RAMSEY PATRICIA<br><br>BAALOUACH ALI<br>68 CAYUGA AVE<br>SAN FRANCISCO CA    94112 | SEE SUPPLEMENTAL INDEX<br>SEE SUPPLEMENTAL ROLL | LAND     26,489<br>STR     14,218<br>RX<br>PERS<br>  LESS EXEMPTIONS<br><br>NET ASSESSED VALUE<br>40,707<br>FV     40,707 | RE    464.04<br>29     40.00<br>89     32.20<br><br><br><br>536.24<br>TOTAL TAX | 268.12<br><br><br>TOTAL AMOUNT<br>268.12<br><br>PAID 12-12-05<br>BATCH  0077 | 268.12<br><br><br>TOTAL AMOUNT<br>268.12<br><br>PAID 12-12-05<br>BATCH  0077 |
| VOL. BLOCK LOT SEQ  BILL NUMBER<br>40  6752  022  01        172866<br>LOCATION OF PROPERTY<br>72 CAYUGA AV<br>ASSESSEE 12:01 A.M. MARCH 1<br>QUAN ALEX & LOU ANN<br><br>QUAN ALEX & LOU ANN<br>72 CAYUGA AVE<br>SAN FRANCISCO CA    94112 | | LAND    116,828<br>STR     105,020<br>RX<br>PERS<br>  LESS EXEMPTIONS<br><br>NET ASSESSED VALUE<br>221,848<br>FV    221,848 | RE  2,529.06<br>89     32.20<br><br><br><br>2,561.26<br>TOTAL TAX | 1,280.63<br><br><br>TOTAL AMOUNT<br>1,280.63<br><br>PAID 10-13-05<br>BATCH  0619 | 1,280.63<br><br><br>TOTAL AMOUNT<br>1,280.63<br><br>PAID 11-02-05<br>BATCH  0294 |
| VOL. BLOCK LOT SEQ  BILL NUMBER<br>40  6752  023  01        172867<br>LOCATION OF PROPERTY<br>76 CAYUGA AV<br>ASSESSEE 12:01 A.M. MARCH 1<br>LEE YAU WEN & WANDA Y Y<br><br>LEE YAU WEN & WANDA Y Y<br>76 CAYUGA AVE<br>SAN FRANCISCO CA    94112 | | LAND    121,933<br>STR     64,623<br>FIX<br>PERS<br>  LESS EXEMPTIONS<br><br>NET ASSESSED VALUE<br>186,556<br>FV    186,556 | RE  2,126.72<br>89     32.20<br><br><br><br>2,158.92<br>TOTAL TAX | 1,079.46<br>107.94<br>10.00<br>TOTAL AMOUNT<br>1,079.46<br><br>PAID 11-15-05<br>BATCH  0602 | 1,079.46<br>107.94<br>10.00<br>TOTAL AMOUNT<br>1,197.40 |
| VOL. BLOCK LOT SEQ  BILL NUMBER<br>40  6752  023  02        172867<br>LOCATION OF PROPERTY<br>76 CAYUGA AV<br>ASSESSEE 12:01 A.M. MARCH 1<br>LEE YAU WEN & WANDA Y Y<br><br>LEE YAU WEN & WANDA Y Y<br>76 CAYUGA AVE<br>SAN FRANCISCO CA    94112 | ALTERATIONS MADE PER BOARD OF<br>SUPERVISORS RES. 218-75<br>ASSR. LIST #A0311 11-17-05 | LAND    121,933<br>STR     64,623<br>RX<br>PERS<br>  LESS EXEMPTIONS<br>11     7,000<br><br>NET ASSESSED VALUE<br>179,556<br>FV    186,556 | RE  2,046.92<br>89     32.20<br><br><br><br>2,079.12<br>TOTAL TAX | 1,039.56<br><br><br>TOTAL AMOUNT<br>1,039.56<br><br>PAID 11-15-05<br>BATCH  0602 | 1,039.56<br><br><br>TOTAL AMOUNT<br>1,039.56<br><br>PAID 02-21-06<br>BATCH  0364 |

A. Settlement Statement



U.S. Department of Housing and Urban Development

OMB No. 2502-0265

# OLD REPUBLIC TITLE COMPANY

**B. TYPE OF LOAN**

| 1. ☐ FHA  2. ☐ FmHA  3. ☒ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4. ☐ VA  5. ☐ Conv. Ins. | 0111006084-JO | 7531026872 | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Ali Baalouach<br>604 Geary Ave<br>San Francisco, CA 94102 | | Realty Mortgage, LLC<br>2901 Douglas Boulevard Suite 205<br>Roseville, CA 95661 |

| G. Property Location<br>68 Cayuga Ave<br>San Francisco, CA 94101  (See Attachment) | H. Settlement Agent<br>Old Republic Title Company | |
|---|---|---|
| | Place of Settlement<br>3000 Clayton Road<br>Concord, CA 94519 | I. Settlement Date<br>11/1/2006 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,854.04 | 403. | |
| 104. PAYOFF EXISTING LOAN | 687,315.53 | 404. | |
| 105. PAYOFF EXISTING LOAN | 85,372.48 | 405. | |
| R.E. Tax Payment (Lot 21 Block 6752) | 4,762.88 | | |
| | | | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes      to | | 406. City/town taxes      to | |
| 107. County taxes      to | | 407. County taxes      to | |
| 108. Assessments      to | | 408. Assessments      to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 783,304.93 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan 1st | 731,250.00 | 502. Settlement charges to seller (line 1400) | |
| Principal amount of new loan 2nd | 146,250.00 | 503. Existing loan(s) taken subject to | |
| | | 504. | |
| | | 505. | |
| | | 506. | |
| | | 507. | |
| | | 508. | |
| | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes      to | | 510. City/town taxes      to | |
| 211. County taxes      to | | 511. County taxes      to | |
| 212. Assessments      to | | 512. Assessments      to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 877,500.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 783,304.93 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | (877,500.00) | 602. Less reductions in amount due seller (line 520) | ( ) |
| **303. CASH ☐ FROM ☒ TO BORROWER** | 94,195.07 | **603. CASH ☐ TO ☐ FROM SELLER** | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better

## L. SETTLEMENT CHARGES

| | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|
| 700. Total sales/broker's commission based on price $ @ %= | | |
| Division of commission (line 700) as follows: | | |
| 701. | | |
| 702. | | |
| 703. Commission disbursed at settlement | | |
| 704. | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN  See Attachment for Subordinate Financing Charges | | |
| 801. Loan Origination Fee | 1,818.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | 350.00 | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Tax Service Fee | | |
| 809. Underwriting Fee | 65.00 | |
| 810. Flood Certification Fee | 775.00 | |
| 811. Realty Mortgage, LLC shall pay a yield spread premium of $18,281.25 to Summit Mortgage | 18.00 | |
| 812. Wire Transfer Fee | | |
| 813. Appraisal Review | 25.00 | |
| | 550.00 | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. Interest, 10/31/06 to 11/01/06, 1 days @ $25.04 | 25.04 | |
| 1000. RESERVES DEPOSITED WITH LENDER | | |
| 1100. TITLE CHARGES | | |
| 1106. Notary Fees to Jay Oxendine | 30.00 | |
| 1108. Title insurance to | | |
| (includes above items numbers:) 1102, 1103, 1108, Endorsements and Additional Title Fees, if any | | |
| 1109. | | |
| 1111. Integrated Refinance Insurance and Settlement Service | 1,075.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| 1201. Recording fees: Deed $          Mortgage $ 123.00          Releases $ | 123.00 | |
| 1202. City/county tax/stamps:     Deed $          Mortgage $ | | |
| 1203. State tax/stamps:     Deed $          Mortgage $ | | |
| 1204. | | |
| 1205. | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | |
| 1301. | | |
| 1302. | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |



# PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Fidelity National Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a California corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

**Fidelity National Title Company**

BY _____ President

ATTEST _____ Secretary

Countersigned

*Visit Us on our Website: www.fntic.com*



# Fidelity National Title Company

***ISSUING OFFICE:*** 2150 John Glenn Drive, Suite #300 • Concord, CA  94520
925 288-8000 • FAX 925 288-6415

***FOR SETTLEMENT INQUIRIES, CONTACT:*** Fidelity National Title Company - San Francisco Sutter Street
1388 Sutter Street, Suite 1200 • San Francisco, CA  94109
415 563-3500 • FAX 415 563-0103

## PRELIMINARY REPORT

---

Title Officer:  Michael Foster
Escrow Officer:  Ann Corkery
Escrow No.:  07-**535189**-AC

Title No.:  07-**535189**-MF
Locate No.:  CAFNT0938-0938-0003-0000535189

TO:     Scott Flaxman Real Estate
       21 Buena Vista Road
       South San Francisco, CA  94080

       ATTN:  Scott Flaxman
       YOUR REFERENCE:  Baalouach (seller)       SHORT TERM RATE:  Yes

**PROPERTY ADDRESS:**   68 Cayuga Avenue, San Francisco, California

---

**EFFECTIVE DATE: July 27, 2007, 07:30 A.M.**

The form of policy or policies of title insurance contemplated by this report is:

    CLTA Standard Coverage Policy - 1990
    ALTA Loan Policy (10/17/92) with ALTA Endorsement-Form 1 Coverage

1.      THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

      A Fee

2.      TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

      **Ali Baalouach, an unmarried man**

3.      THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

      SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

                                BH\BH  08/07/2007

CLTA Preliminary Report Form - Modified (11/17/06)

Title No. 07-**535189**-MF
Locate No. CAFNT0938-0938-0003-0000535189

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT NO. 80, according to map entitled, "Map of the Spring Valley Homestead", filed August 31, 1876, in Book "C" and "D" of Maps, at Page 149, in the office of the County Recorder of the City and County of San Francisco, State of California.

APN: Lot 21, Block 6752

2

Title No. 07-**535189**-MF
Locate No. CAFNT0938-0938-0003-0000535189

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.   **Property taxes**, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2007-2008.

2.   **Said property has been declared tax defaulted** for non-payment of delinquent taxes for the fiscal year(s) 2006-2007

|  |  |
|---|---|
| APN: | Lot 21, Block 6752 |
| Default No.: | |
| Default Date: | June 30, 2007 |

Amounts to redeem for the above stated fiscal year (and subsequent years, if any) are:

|  |  |
|---|---|
| Amount: | $5,407.05 |
| By: | August 31, 2007 |
| Amount: | $5,478.49 |
| By: | September 30, 2007 |

3.   **The herein described property** lies within the boundaries of a Mello-Roos Community Facilities District ("CFD"), as follows:

|  |  |
|---|---|
| CFD No: | 90-1 |
| For: | School Facility Repair and Maintenance |
| Disclosed by: | Notice of Special Tax Lien recorded July 5, 1990 in Book F160, Page 1044 and by Supplemental Notice of Special Tax Lien recorded July 11, 1990, in Book F165, Page 1 et. seq., Official Records of the City and County of San Francisco |

This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the City and County of San Francisco. The tax may not be prepaid.

Further information may be obtained by contacting:

San Francisco Unified School District
Office of the Superintendent for Business
135 Van Ness Ave.
San Francisco, CA  94102
Phone (415) 241-6024

4.   **The lien of supplemental taxes**, if any, assessed pursuant to the provisions of Chapter 3.5 (Commencing with Section 75) of the Revenue and Taxation code of the State of California.

CLTA Preliminary Report Form - Modified (11/17/06)

ITEMS: (continued)

Title No. 07-**535189**-MF
Locate No. CAFNT0938-0938-0003-0000535189

5.    **A deed of trust** to secure an indebtedness in the amount shown below, and any other obligations secured thereby

|  |  |
|---|---|
| Amount: | $731,250.00 |
| Dated: | October 24, 2006 |
| Trustor: | Ali Baalouach, an unmarried man |
| Trustee: | Commonwealth Land Title Company |
| Beneficiary: | Mortgage Electronic Registration Systems, Inc., solely as nominee for Realty Mortgage, LLC |
| Address: | 2505 Highway 360 #850<br>Grand Prairie, TX  75050 |
| Loan No.: | 7531026872 |
| Recorded: | November 2, 2006, Instrument No. 2006-I278024-00, Book J259, Page 160, of Official Records |

"Insured - YES"

6.    **A deed of trust** to secure an indebtedness in the amount shown below, and any other obligations secured thereby

|  |  |
|---|---|
| Amount: | $146,250.00 |
| Dated: | October 24, 2006 |
| Trustor: | Ali Baalouach, an unmarried man |
| Trustee: | Commonwealth Land Title Company |
| Beneficiary: | Mortgage Electronic Registration Systems, Inc., solely as nominee for lender Realty Mortgage LLC |
| Address: | 2505 N. Highway 360 #850<br>Grand Prairie, TX  75050 |
| Loan No.: | 7531026873 |
| Recorded: | November 2, 2006, Instrument No. 2006-I278025-00, Book J259, Page 161, of Official Records |

"Insured - YES"

Said deed of trust recites that it is subordinate to the deed of trust recorded concurrently therewith.

To avoid delays at the time of closing, if the above deed of trust is an Equity Line/Line of Credit, it will be necessary that all checks, passbooks, credit cards together with instructions to close the account be submitted prior to the close of escrow.

In order to expedite compliance with the above, please do the following:

(a)    Request that the account be frozen
(b)    Obtain a statement from the lender that no advances have been made after the issuance of the demand for payoff
(c)    Upon delivery of the payoff check obtain a full reconveyance
(d)    In that said deed of trust, under a design line agreement, may secure more than one note, make inquiry when requesting the demand as to the existence of more than one note.

CLTA Preliminary Report Form - Modified (11/17/06)

7.     **The application** for title insurance was placed by reference to only a street address or tax identification number.

Based on our records, we believe that the description in this report covers the parcel requested, however, if the legal description is incorrect a new report must be prepared.

If the legal description is incorrect, in order to prevent delays, the seller/buyer/borrower must provide the Company and/or the settlement agent with the correct legal description intended to be the subject of this transaction.

## END OF ITEMS

**Note 1.**    The current owner does NOT qualify for the $20.00 discount pursuant to the coordinated stipulated judgments entered in actions filed by both the Attorney General and private class action plaintiffs for the herein described property.

**Note 2.**    A recorded Certificate of Energy Compliance for the property described herein recorded February 8, 2005, Instrument No. 2005-H900858-00, Book I822, Pages 487, of Official Records.

**Note 3.**    The name(s) of the buyer(s) furnished with this application for Title Insurance is/are:

To be determined

If these names are incorrect, incomplete or misspelled, please notify the Company.

**Note 4.**    Property taxes for the fiscal year shown below HAVE NOT BEEN PAID.  (Please refer to Default information shown above.)  For proration purposes the amounts are:

| | |
|---|---|
| APN: | Lot 21, Block 6752 |
| Fiscal year | 2006-2007 |
| 1st Installment: | $4,762.88  Paid |
| 2nd Installment: | $4,762.88  Defaulted |
| Exemption: | $7,000.00 |
| Land: | $504,900.00 |
| Improvements: | $336,600.00 |
| Bill No.: | 174287 |

**The lien of the assessment** shown below, which assessment is or will be collected with, and included in, the property taxes shown above.

| | |
|---|---|
| Assessment: | Rent stabilization |
| Amount: | $22.00 |

CLTA Preliminary Report Form - Modified (11/17/06)

NOTES: (continued)

Title No. 07-**535189**-MF
Locate No. CAFNT0938-0938-0003-0000535189

**Note 5.**   **Supplemental assessment** for 2004-2005

Bill No.:               414167
1st Installment:        $1,122.67  Paid
2nd Installment:        $1,122.67  Paid

**Note 6.**   **Supplemental assessment** for 2005-2006

Bill No.:               503634
1st Installment:        $4,430.57  Paid
2nd Installment:        $4,430.57  Paid

**Note 7.**   None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

**Note 8.**   The Company is not aware of any matters which would cause it to decline to attach the CLTA Endorsement Form 116 indicating that there is located on said land a multiple family dwelling known as 68 Cayuga Avenue, San Francisco , California  to an Extended Coverage Loan Policy.

**Note 9.**   There are NO deeds affecting said land, recorded within twenty-four (24) months of the date of this report.

**Note 10.**   Effective October 17, 1994 consider City of San Francisco Transfer Tax
$100 to $250,000 at $2.50 per $500 ($5.00 per thousand)
$250,000 to $1,000,000 per $500 ($6.80 per thousand)
$1,000,000 or more $3.75 per $500 ($7.50 per thousand)

NOTE:  These rates are for documents recorded on or after October 17, 1994, regardless of when the instrument was executed.

**Note 11.**   NOTE:  The policy of title insurance will include an arbitration provision.
The Company or the insured may demand arbitration.  Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation.  Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

**Note 12.**   If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions.  Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document.  Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

CLTA Preliminary Report Form - Modified (11/17/06)

**Note 13.**   Wiring instructions for Fidelity National Title Company, San Francisco, CA, are as follows:

| | |
|---|---|
| Receiving Bank: | Wells Fargo |
| | 707 Wilshire Blvd., 13th Floor |
| | Los Angeles, CA 90017 |
| ABA Routing No.: | 121000248 |
| Credit Account Name: | Fidelity National Title Company - San Francisco Sutter Street |
| | 1388 Sutter Street, Suite 1200, San Francisco, CA 94109 |
| Credit Account No.: | 4375682432 |
| Escrow No.: | 07-**535189**-AC |

These wiring instructions are for this specific transaction involving the Title Department of the Concord office of Fidelity National Title Company. These instructions therefore should not be used in other transactions without first verifying the information with our accounting department. It is imperative that the wire text be exactly as indicated. Any extraneous information may cause unnecessary delays in confirming the receipt of funds.

**Note 14.**   Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third-party service. If the above requirements cannot be met, please call the company at the number provided in this report.

**END OF NOTES**



6752

DE BOOM TR
BLK 7
SPRING VALLEY HD ASS'N
LOTS 72 - 95
SOLOMONS MAP OF ROCK RANCH
LOTS 41-46

IMPORTANT: This plat is not a survey,
it is merely furnished as a convenience
to locate the land in relation to adjoining
streets and other lands, and not to
guarantee dimensions, distances,
bearings or acreage.

# ATTACHMENT ONE

## AMERICAN LAND TITLE ASSOCIATION
## RESIDENTIAL TITLE INSURANCE POLICY (6-1-87) EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
   - land use
   - improvements on the land
   - land division
   - environmental protection

   This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at policy date.

   This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.

2. The right to take the land by condemning it, unless:
   - a notice of exercising the right appears in the public records on the Policy Date
   - the taking happened prior to the Policy Date and is binding on you if you bought the land without knowledge of the taking

3. Title Risks:
   - that are created, allowed, or agreed to by you
   - that are known to you, but not to us, on the Policy Date-unless they appeared in the public records
   - that result in no loss to you
   - that first affect your title after the Policy Date – this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks

4. Failure to pay value for your title.

5. Lack of a right:
   - to any land outside the area specifically described and referred to in Item 3 of Schedule A

     or
   - in streets, alleys, or waterways that touch your land

   This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

In addition to the Exclusions, you are not insured against loss, costs, attorneys' fees, and the expenses resulting from:

1. Any rights, interests, or claims of parties in possession of the land not shown by the public records.

2. Any easements or liens not shown by the public records. This does not limit the lien coverage in Item 8 of Covered Title Risks.

3. Any facts about the land which a correct survey would disclose and which are not shown by the public records. This does not limit the forced removal coverage in Item 12 of Covered Title Risks.

4. Any water rights or claims or title to water in or under the land, whether or not shown by the public records.

# ATTACHMENT ONE
## (CONTINUED)

### CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims, or other matters:

    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy; or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### SCHEDULE B, PART I
### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

### PART I

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2.  Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.

# ATTACHMENT ONE
## (CONTINUED)

**AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92)**
**WITH A.L.T.A. ENDORSEMENT-FORM 1 COVERAGE**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims, or other matters:
    (a) created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or

material or to the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy); or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7.  Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
    (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
    (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
    (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
        (a) to timely record the instrument of transfer; or
        (b) of such recordation to impart notice to a purchaser for value or a judgement or lien creditor.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.
In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2.  Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

## ATTACHMENT ONE
### (CONTINUED)

**2006 AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (06-17-06)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;
  or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.
In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

# ATTACHMENT ONE
## (CONTINUED)

**AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (10-17-92)**
**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims, or other matters:
(a) created, suffered, assumed or agreed to by the insured claimant;
(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
(c) resulting in no loss or damage to the insured claimant;
(d) attaching or created subsequent to Date of Policy, or
(e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
(i) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or
(ii) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:
(a) to timely record the instrument of transfer; or
(b) of such recordation to impart notice to a purchaser for value or a judgement or lien creditor.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.
In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

# ATTACHMENT ONE
### (CONTINUED)

## 2006 AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.
In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

# ATTACHMENT ONE
**(CONTINUED)**

**CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (10-22-03)**
**ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (10-22-03)**
**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:
   a. building
   b. zoning
   c. Land use
   d. improvements on Land
   e. Land division
   f. environmental protection

This Exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.
This Exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.

2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.

3. The right to take the Land by condemning it, unless:
   a. notice of exercising the right appears in the Public Records at the Policy Date; or
   b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.

4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date – this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.

5. Failure to pay value for Your Title.

6. Lack of a right:
   a. to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.

This Exclusion does not limit the coverage described in Covered Risk 11 or 18.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 14, 15, 16 and 18, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 14: | 1.00% of Policy Amount <br> or <br> $ 2,500.00 <br> (whichever is less) | $ 10,000.00 |
| Covered Risk 15: | 1.00% of Policy Amount <br> or <br> $ 5,000.00 <br> (whichever is less) | $ 25,000.00 |
| Covered Risk 16: | 1.00% of Policy Amount <br> or <br> $ 5,000.00 <br> (whichever is less) | $ 25,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount <br> or <br> $ 2,500.00 <br> (whichever is less) | $ 5,000.00 |

# ATTACHMENT ONE
## (CONTINUED)

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (10/13/01)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvements now or hereafter erected on the Land; (iii) a separation in ownership or a change in the dimensions or areas of the Land or any parcel of which the Land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 12, 13, 14, and 16 of this policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the Public Records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without Knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (this paragraph does not limit the coverage provided under Covered

Risks 8, 16, 18, 19, 20, 21, 22, 23, 24, 25 and 26); or
   (e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the Land is situated.
5. Invalidity or unenforceability of the lien of the Insured Mortgage, or claim thereof, which arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, except as provided in Covered Risk 27, or any consumer credit protection or truth in lending law.
6. Real property taxes or assessments of any governmental authority which become a lien on the Land subsequent to Date of Policy. This exclusion does not limit the coverage provided under Covered Risks 7, 8(e) and 26.
7. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This exclusion does not limit the coverage provided in Covered Risk 8.
8. Lack of priority of the lien of the Insured Mortgage as to each and every advance made after Date of Policy, and all interest charged thereon, over liens, encumbrances and other matters affecting the title, the existence of which are Known to the Insured at:
   (a) The time of the advance; or
   (b) The time a modification is made to the terms of the Insured Mortgage which changes the rate of interest charged, if the rate of interest is greater as a result of the modification than it would have been before the modification. This exclusion does not limit the coverage provided in Covered Risk 8.
9. The failure of the residential structure, or any portion thereof to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at Date of Policy.

# Notice

You may be entitled to receive a $20.00 discount on escrow services if you purchased, sold or refinanced residential property in California between May 19, 1995 and November 1, 2002.  If you had more than one qualifying transaction, you may be entitled to multiple discounts.

If your previous transaction involved the same property that is the subject of your current transaction, you do not have to do anything; the Company will provide the discount, provided you are paying for escrow or title services in this transaction.

If your previous transaction involved property different from the property that is subject of your current transaction, you must - prior to the close of the current transaction - inform the Company of the earlier transaction, provide the address of the property involved in the previous transaction, and the date or approximate date that the escrow closed to be eligible for the discount.

Unless you inform the Company of the prior transaction on property that is not the subject of this transaction, the Company has no obligation to conduct an investigation to determine if you qualify for a discount. If you provide the Company information concerning a prior transaction, the Company is required to determine if you qualify for a discount which is subject to other terms and conditions.

Effective through November 1, 2014

Fidelity National Title Group of Companies' Privacy Statement

**July 1, 2001**

We recognize and respect the privacy expectations of today's consumers and the requirements of applicable federal and state privacy laws.  We believe that making you aware of how we use your non-public personal information ("Personal Information"), and to whom it is disclosed, will form the basis for a relationship of trust between us and the public that we serve.  This Privacy Statement provides that explanation.  We reserve the right to change this Privacy Statement from time to time consistent with applicable privacy laws.

**In the course of our business, we may collect Personal Information about you from the following sources:**

- From applications or other forms we receive from you or your authorized representative;
- From your transactions with, or from the services being performed by, us, our affiliates, or others;
- From our internet web sites;
- From the public records maintained by governmental entities that we either obtain directly from those entities, or from our affiliates or others; and
- From consumer or other reporting agencies.

**Our Policies Regarding the Protection of the Confidentiality and Security of Your Personal Information**

We maintain physical, electronic and procedural safeguards to protect your Personal Information from unauthorized access or intrusion.  We limit access to the Personal Information only to those employees who need such access in connection with providing products or services to you or for other legitimate business purposes.

**Our Policies and Practices Regarding the Sharing of Your Personal Information**

We may share your Personal Information with our affiliates, such as insurance companies, agents, and other real estate settlement service providers.  We also may disclose your Personal Information:

- to agents, brokers or representatives to provide you with services you have requested;
- to third-party contractors or service providers who provide services or perform marketing or other functions on our behalf; and
- to others with whom we enter into joint marketing agreements for products or services that we believe you may find of interest.

In addition, we will disclose your Personal Information when you direct or give us permission, when we are required by law to do so, or when we suspect fraudulent or criminal activities.  We also may disclose your Personal Information when otherwise permitted by applicable privacy laws such as, for example, when disclosure is needed to enforce our rights arising out of any agreement, transaction or relationship with you.

One of the important responsibilities of some of our affiliated companies is to record documents in the public domain.  Such documents may contain your Personal Information.

**Right to Access Your Personal Information and Ability to Correct Errors or Request Changes or Deletion**

Certain states afford you the right to access your Personal Information and, under certain circumstances, to find out to whom your Personal Information has been disclosed.  Also, certain states afford you the right to request correction, amendment or deletion of your Personal Information.  We reserve the right, where permitted by law, to charge a reasonable fee to cover the costs incurred in responding to such requests.

All requests must be made in writing to the following address:

Fidelity National Title Group, Inc.
Privacy Compliance Officer
601 Riverside Avenue
Jacksonville, FL 32204

**Multiple Products or Services**

If we provide you with more than one financial product or service, you may receive more than one privacy notice from us.  We apologize for any inconvenience this may cause you.