UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI BAALOUACH,<br><br>    Plaintiff,<br><br>v.<br><br>MEHDI NAFAI, ET AL.,<br><br>    Defendants.<br>_____/ | No. C-07-05433 JSW (JCS)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** [Docket No. 23] |

## I.  INTRODUCTION

Plaintiff Ali Baalouach ("Baalouach") filed a Complaint seeking relief from Defendants Mehdi Nafai ("Nafai"), Doris Alicia Cordova ("Cordova"), Summit Mortgage ("Summit") and Realty Mortgage, LLC ("Realty") under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* Plaintiff also asserted state law claims for deceit (California Civil Code Sections 1709-1710) and breach of fiduciary duty. Plaintiff settled with Defendants Nafai and Realty. Defendants Summit and Cordova did not answer or otherwise respond to the Complaint. The Clerk entered default against Summit and Cordova pursuant to Fed.R.Civ.P. 55(a) on March 4, 2008. Plaintiff now brings a motion requesting that the Court enter default judgment against Summit and Cordova ("the Motion"). A hearing on the Motion was held on Friday, August 22, 2008 at 1:30 p.m. Plaintiff filed supplemental materials in support of the Motion on August 26, 2008. For the reasons stated below, it is recommended that the Motion be GRANTED in part and DENIED in part.

## II. BACKGROUND

### A. Factual Background

Plaintiff, Ali Baalouach, is a 30 year-old, resident alien from Morocco who speaks Moroccan "Berber" as his first language and Arabic as his second language. Complaint, ¶ 15. He speaks limited English and can read almost no English. *Id.* He is the owner of real property located at 68 Cayuga Avenue, San Francisco, CA 94112 ("the Property"). *Id.* Defendant Summit is a mortgage brokerage corporation licensed by the California Department of Real Estate. *Id.*, ¶ 20. Defendant Doris Cordova is a California Department of Real Estate licensed real estate broker and corporate officer of Summit who resides in California. *Id.*, ¶ 17.

In September 2006, Baalouach discussed with Mehdi Nafai, a Summit employee, the possibility of refinancing the Property. *Id.*, ¶¶ 25, 27. These conversations were conducted in Arabic. *Id.*, ¶ 26. Nafai agreed to serve as Baalouach's agent and to provide him mortgage brokerage services in connection with Baalouach's desire to refinance the existing loans on the Property. Complaint, ¶ 27. Nafai represented to Plaintiff that he would assist him in obtaining a good loan at a low interest rate. *Id.*, ¶ 29. Nafai further represented to Baalouach that the total fee that he, Cordova and Summit would receive for brokerage services in connection with the refinancing of the Property would not exceed $3,500. *Id.*, ¶ 30. Nafai told Baalouach that the lender would pay the entire brokerage fee. *Id.*, ¶ 31. Nafai, Cordova and Summit provided loan application information and the paperwork necessary to secure a federally related mortgage loan.[1] *Id.*, ¶ 32.

---

[1] A "federally related mortgage loan" is one which:

(**A**) is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and

(**B**)(**i**) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government, or

2

Prior to refinancing the Property, Plaintiff had two existing loans on the Property. *Id*., ¶ 34. The first loan was secured by a Deed of Trust with EMC Corporation as the beneficiary. *Id*. The second loan was secured by a Deed of Trust with Greenpoint Mortgage as the beneficiary. *Id.* The loans supplied for the refinance were brokered by Summit and Cordova and funded by Realty. *Id*., ¶ 35. On October 26, 2006, Nafai, Cordova, Summit and Realty conducted a loan closing to consummate two, new residential loans to Baalouach. *Id*., ¶ 36. The proceeds of the new loans were to be used to refinance the two existing deeds of trust secured by the Property and for Baalouach's personal, family or household purposes. *Id*., ¶ 38. Funds from the refinance were paid out to EMC Corporation in satisfaction of the First Trust Deed in the amount of $687,315.53 and to Greenpoint in satisfaction of the Second Trust Deed in the amount of $85,372.48. *Id*.

Baalouach received a "HUD-1 Settlement Statement" ("Settlement Statement"), dated November 1, 2006. *Id*., ¶ 40. The statement documented a yield spread premium (YSP)[2] of $18,281.25 paid from Realty to Summit. *Id.*, ¶ 43; *see also* Motion, Ex. A (Settlement Statement).

---

**(ii)** is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency; or

**(iii)** is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan Mortgage Corporation; or

**(iv)** is made in whole or in part by any "creditor," as defined in section 1602(f) of Title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year, except that for the purpose of this chapter, the term "creditor" does not include any agency or instrumentality of any State;

12 U.S.C.A. § 2602(b).

[2] A YSP is "a lump sum paid by the lender to a broker at closing when the loan originated by the broker bears an above-par interest rate." *Scheutz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1007 (9th Cir. 2002). The YSP is the difference between the par rate and the actual interest rate on the loan, which is given to the broker as a bonus. *Bjustrom v. Trust One Mort. Corp.,* 322 F.3d 1201, 1204 (9th Cir. 2003). A YSP is typically a percentage of the loan amount. *Id.* Thus, the higher the loan is above par value, the higher the YSP paid to the mortgage broker. *Id.*

Plaintiff alleges that the YSP was, in essence, a "kickback" paid by Realty to Summit in return for Summit referring Baalouach to Realty for the refinance. *Id.*, ¶ 44. Baalouach further alleges that Realty arranged with Summit, Cordova and Nafai that Baalouach would be charged a higher interest rate than Realty had originally approved for Baalouach as a way of providing funds for this kickback. *Id.*, ¶ 45. As a result, Baalouach alleges, he received a loan at a "higher interest rate" and with "more oppressive loan terms" than he could have received elsewhere.[3] *Id.*, ¶ 46.

Plaintiff alleges he had no understanding and received no explanation that Cordova and Summit received a "yield spread premium" and that this fee was paid indirectly by him through less advantageous loan terms. *Id.*, ¶¶ 48-49. He alleges he also was not "advised in a manner than he was reasonably capable of understanding" that there was a pre-payment penalty on the new loans and that the First Trust Deed had a negative amortization component. *Id.*, ¶ 51. Nor was he advised that if he made only the minimum loan payment, the loan balance would actually grow larger rather than smaller over time. *Id.*, ¶ 53.

As of February 4, 2008, the total outstanding balance on the two loans secured by the Property was approximately $948,160.28. Declaration of Ali Baalouach in Support of Motion for Default Judgment as to Doris Alicia Cordova and Summit Mortgage Corporation ("Baalouach Decl."), ¶ 32. On June 30, 2008, the Property was sold in foreclosure. *See* Declaration of Scott A. Flaxman in Support of Ali Baalouach's Motion for Default Judgment and to the Authenticity of Plaintiff's Exhibit J & Ex. J (Short Sale HUD Final Statement).

**B.    Procedural History**

Plaintiff filed his Complaint on October 24, 2007. In it, he asserts four claims. In his first claim (Claim One), Plaintiff asserts RESPA violations against Realty only, under 12 U.S.C. §§ 2607(a), (b) & (d) and 24 C.F.R. §§ 3500.14(b) & (c), alleging that Realty paid a kickback to

---

[3] Plaintiff does not disclose the interest rate of the loan. Nor does Plaintiff provide any evidence regarding the rate he alleges Realty originally approved.

4

Cordova, Summit and Nafai and that it improperly gave or received a percentage of charges made or received for settlement services.  Plaintiff asks for an award of three times the amount of the alleged kickback under 12 U.S.C. § 2607(d).  Complaint ¶ 58.  Plaintiff asserts his second claim (Claim Two) against Defendants Realty, Cordova, Summit and Nafai, asserting the same RESPA violations as he asserted against Realty in Claim One.  Plaintiff asserts a third claim (Claim Three) against Summit, Nafai and Cordova for breach of fiduciary duty.  Complaint ¶ 65.  In Claim Three, Plaintiff seeks the imposition of a constructive trust upon the proceeds of the transaction that were paid to Summit, Nafai and Cordova, as well as punitive damages.  Complaint ¶ 66.  Finally, Plaintiff asserts a claim (Claim Four) for deceit under California Civil Code § 1709.  Complaint ¶¶ 67-74.  In Claim Four, Plaintiff alleges that Summit, Cordova and Nafai knew that Plaintiff did not understand what a "yield spread premium" was and were therefore bound to disclose additional, explanatory information to him.  Complaint ¶ 78.  Plaintiff seeks actual damages under Claim Four.

On March 3, 2008, Plaintiff filed a request to dismiss Realty from the proceedings as the two sides had reached a settlement.  Plaintiff voluntarily dismissed Nafai from the action on August 26, 2008. On March 4, 2008, the clerk entered default as to Defendants' Cordova and Summit.  Plaintiff filed a motion for default judgment on March 16, 2008, which was referred to the undersigned magistrate judge. On March 24, 2008, the Court ordered that Plaintiff submit evidence in support of his default judgment motion establishing his entitlement to damages.  On May 26, 2008, Plaintiff filed a declaration with additional evidence in support of the Motion.  In addition, on May 30, 2008, Plaintiff filed a declaration by Defendant Mehdi Nafai in support of the Motion.  On June 3, 2008, Plaintiff filed a proposed order for default judgment.

In his proposed order, Plaintiff requests the following damages against Cordova and Summit, jointly and severally: 1)  $54,843.75 in damages under 12 U.S.C. §2607(d)(2); this amount is three times the YSP of $18,281.25 that was paid by the lender (Realty) to the broker (Summit) on the refinance; 2) $85,000 in attorneys' fees and  $850.00 in costs under 12 U.S.C. §2607(d)(5);  3)

5

1  $450,000 in punitive damages under California Civil Code §3294, for fraud; and 4) $200,629.82
2  and $65,000 under California Civil Code section 1709, in "lieu of loans at the actual approval rates
3  rather than inflated rates and more oppressive terms;" 5) post-judgment interest at a rate of 10
4  percent.

In support of his Motion, Plaintiff provides a declaration stating that he has little understanding of English. Baalouach Decl. ¶ 2. He further states that he has suffered $200,629.82 in actual damages, consisting of the following amounts: 1) $83,000 for the original down-payment on the Property; 2) $79,618.47 in loan payments on the Property from the time of purchase; 3) $30,694.24 in property taxes on the Property from the time of purchase; 4) $760.14 in water and sewer charges on the Property from the time of purchase; and 5) $6,556.95 in repairs on the Property. Baalouach Decl. ¶¶ 4-10. In contrast, the Motion states that Plaintiff's actual damages were $215,000. Motion at 13, ¶ 53.[4]

Plaintiff also filed a declaration by Nafai stating that Summit and Cordova conducted business as mortgage brokers and that they received a fee for referring Plaintiff to Realty, which the Plaintiff paid for "through a higher interest rate, and inferior loan terms than that which . . . [he] could have otherwise received." Nafai Decl., ¶¶ 16-18. According to Nafai, Plaintiff received no explanation and had no understanding of the "yield spread premium" on the loan. Nafai Decl. ¶ 21.

The Court also received a letter from Defendant Cordova in response to the Motion, filed May 6, 2008. In it, Cordova asserts that the allegations against "me and my company" are false. She also states that "we were never served as stated in the complaint since our office was located in 3507 Clayton Road Concord, California 94519." Finally, Cordova states that she and her husband are in the process of filing for Chapter 7 bankruptcy.[5] *Id.*

---

[4] Plaintiff's counsel stipulated at oral argument that the numbers in the Proposed Order accurately reflect the amounts Plaintiff is seeking in damages.

[5] At oral argument, Plaintiff's counsel represented to the Court that he was unaware of any pending bankruptcy proceeding with respect to Cordova and/or Summit.

## III. ANALYSIS

### A. Legal Standard Regarding Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the party's default based upon failure to plead or otherwise defend the action. Fed.R.Civ.P. 55(b). A defendant's default, however, does not automatically entitle the plaintiff to a court-ordered default judgment. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The district court has discretion in its decision to grant or deny relief upon an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Lau Ah Yew v. Dulles*, 236 F.2d 415-16 (9th Cir. 1956) (affirming district court's denial of default judgment). First, the Court must address the adequacy of service of process on the defendant against whom default judgment is sought. *Penpower Technology Ltd. v. S.P.C. Technology*, 2008 WL 2468486 *2 (N.D. Cal. June 17, 2008) (citing *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001)). Where service is found to have been proper, the Court may proceed to consider the following factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); Fed.R.Civ.P. 8(d). On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). As a result, where

7

the allegations in a complaint are not "well-pleaded," liability is not established by virtue of the defendant's default and default judgment should not be entered. *Id*.

### B. Adequacy of Service

As a preliminary matter, the Court addresses the assertion by Cordova that the Complaint was not properly served. The Court concludes that service was proper as to both Cordova and Summit.

First, the Court addresses service on Cordova as an individual. Federal Rule of Civil Procedure 4(e)(1) provides that an individual "may be served in a judicial district of the United States by following state law for the serving of a summons in an action brought in courts of general jurisdiction in the state where the district court is located." In the alternative, Rule 4(e)(2)(B) allows for service on an individual by leaving a copy of the complaint and summons "at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Here, Cordova (as an individual defendant) was served by leaving a copy of the complaint and summons with an individual at 50 Surf View Drive, Bay View, CA, described as "35 yrs/5'9"/Hisp/180 lbs/M/Blk hr." Docket Nos. 4. To establish that this was Cordova's residence, Plaintiff has submitted evidence that this address is a single family residence and that title is held by Doris Cordova. *See* Affidavit of Scott A. Flaxman in Support of Plaintiff Ali Baalouach's Motion for Default Judgment filed August 27, 2008 ("Flaxman Supp. Decl."), Ex. R (Stewart Title Tax Record showing title owner as Dora Cordova); Ex. K (State of California Department of Real Estate record showing that Dora Alicia Cordova is former name of Doris Alicia Cordova). This evidence is sufficient to show that service was proper as to Cordova as an individual.

Next, the Court must determine whether service on Summit was proper. Plaintiff alleged in his complaint that Summit Mortgage is a California corporation. Plaintiff subsequently found that Summit Mortgage is listed with the California Department of Real Estate both as a dba for Cordova as a broker, *see* Flaxman Supp. Decl., Ex. K, and as a dba for a corporation named La Hacienda Real Estate, Inc. ("La Hacienda"), of which Cordova is listed as "Designated Officer" and agent for service of process.

8

*See id.*, Exs. L & N. Doris Cordova is also listed as agent for service of process for a suspended corporation called One Summit Mortgage, Inc. ("One Summit"). *Id.*, Ex. O.

California Business Portal web pages maintained by the California Department of State reflected that the office address for both La Hacienda and One Summit was 1220 Oakland Blvd., Suite 200, Walnut Creek, CA 94596. *Id.*, Exs. N & O. Accordingly, Plaintiff attempted to serve the complaint on Summit at these addresses. *See id.*, Exs. P & Q. The process server was unable to serve the documents, however, because the business had moved. *Id.*, Ex. Q. Therefore, Plaintiff served the complaint on Summit at Cordova's home and mailed a copy of the complaint to the same address. *Id.*, Exs. U & V.

Service is proper as to Summit for two reasons. First, to the extent that Cordova herself used Summit as a dba, service on Summit is proper for the same reasons service on Cordova was proper. In the alternative, to the extent there is also evidence that Summit existed as a corporation, service is also proper. Federal Rule of Civil Procedure 4(h)(1) authorizes service upon a corporation as consistent with state law. California Code Civ. Proc. Section 416.10, in turn, allows service on a corporation "(a) to a person designated as agent for service of process; (b) to the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process; (c) if the corporation is a bank, to a cashier or assistant cashier or to a person specified in subdivision (a) or (b); and (d) if authorized by any provision in Section 1701, 1702, 2110, 2111 of the Corporations Code . . . as provided by that provision." Doris Cordova is listed as the agent for service of process of Hacienda, for which Summit is a dba, as well as for One Summit and therefore, service on Cordova was proper.

The Court rejects Cordova's assertion that service was improper because the Complaint was not served at Summit's office address at 3507 Clayton Road, Concord, California 94519. First, Cordova has not offered any evidence that this address was Summit's registered address with either the California Department of State or the California Department of Real Estate. Second, Cal. Code Civ. Proc. Section

9

415.20 provides that in lieu of personal delivery to a person specified in Section 416.10, the complaint and summons may be served by leaving a copy of the summons and complaint "during usual office hours in his or her office or, if no physical address is known, at his or her mailing address . . . with the person who is apparently in charge thereof and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Here, Plaintiff attempted to serve the complaint on the office address that *was* listed with the California Department of Real Estate. Because the complaint could not be served at that address, Plaintiff served it on Cordova at her residence by leaving a copy at her address and mailing a copy to the same address. In doing so, Plaintiff complied with the requirements for substitute service set forth in Section 415.20.

### C. Eitel Factors

Having concluded that service on Cordova and Summit was proper, the Court turns to the *Eitel* factors to determine whether default judgment should be entered against those defendants. The Court concludes that entry of default judgment is appropriate for the reasons stated below.

#### 1. Excusable Neglect

There is no indication that the Defendants' failure to appear was due to excusable neglect. Neither Summit nor Cordova has appeared in this action, even though Cordova (who described Summit as "her company" in her letter to the Court) is aware of the action. Further, although Cordova states that she and her husband are in the process of filing for bankruptcy, there is no evidence in the record that Cordova has actually filed for bankruptcy. The mere possibility that a defendant will file for bankruptcy is not excusable neglect. Rather, the Court finds that Cordova and Summit's failure to appear in this action is wilful. This factor favors entry of default judgment.

#### 2. Possible Prejudice to Plaintiff

The Plaintiff would suffer prejudice if default judgment is not entered because Plaintiff would be without another course of recovery. Denying a plaintiff a means of recourse is by itself

10

sufficient to meet the burden posed by this factor. *See Phillip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). This factor also favors entry of default judgment.

### 3. Amount of Money at Stake

Plaintiff asserts three claims against Summit and Cordova: 1) a claim under RESPA; 2) a claim for breach of fiduciary duty; and 3) a claim for deceit, under Cal. Civil Code §§ 1709-1710. While statutory damages are easily determined under RESPA (discussed below), damages on Plaintiff's remaining claims are less easily determined. In fact, Plaintiff has set forth three different figures for his actual damages. In the Motion, Plaintiff states that his actual damages are $215,000.00. *See* Motion at 13. In the proposed order, Plaintiff states that his actual damages are $200,629.82 and $65,000.00 "in lieu of loans at the actual approval rates and loan terms at the actual approval rates rather than the inflated rates and more oppressive terms." In his declaration, Baalouach states that his actual damages were $200,629.82. All three of these figures appear to be based on some unspecified loans (with lower interest rates and better terms) that Plaintiff believes he could have obtained but for Defendants' wrongful conduct. No evidence has been provided to back this theory up, however, rendering all of the damage calculations speculative. Similarly, Plaintiff's request for exemplary damages on these claims is speculative.

Where damages on a claim are speculative, entry of default judgment on that claim may be inappropriate. *See Penpower Technology v. SPC Technology*, 2008 WL 2468486 (N.D.Cal. June 17, 2008) (holding that where plaintiffs presented three theories in support of their request for non-statutory damage, none of which was "particularly compelling," this factor favored denial of request for default judgment). Because Plaintiff has offered no convincing basis for calculating damages on his breach of fiduciary duty and deceit claims, it is recommended that default judgment be denied as to these claims.

11

### 4. Substantive Merits of the RESPA Claim

The Court now addressed the allegations of Plaintiff's remaining claim, under RESPA, to determine whether the Court should enter default judgment as to that claim. Plaintiff's RESPA claim is based on the allegation that Cordova and Summit received a kickback from Realty, in the form of the YSP paid by Plaintiff, in violation of 12 U.S.C. § 2607(a).[6] The Court concludes that Plaintiff's allegations are sufficient to state a claim under Section 2607.

Section 2607(a) prohibits "kickbacks" in mortgage loans transactions, providing that:

> [n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related loan shall be referred to any person.

12 U.S.C. § 2607(a). Subsections (a) is qualified, however, by subsection (c), which allows for certain types of payments. Subsection (c) provides, in part:

> Nothing in this section shall be construed as prohibiting (1) the payment of a fee (A) to attorneys at law for services actually rendered or (B) by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance or (C) by a lender to its duly appointed agent for services actually performed in the making of a loan, (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed, (3) payments pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers, (4) affiliated business arrangements so long as (A) a disclosure is made of the existence of such an arrangement to the person being referred and, in connection with such referral, such person is provided a written estimate of the charge or range of charges generally made by the provider to which the person is referred . . .

12 U.S.C. § 2607(c).

The Ninth Circuit, following the approach of the Department of Housing and Urban Development ("HUD"), has held that "a yield spread premium is not per se legal or illegal," but should be considered on a case by case basis. *Schuetz v. Banc One Mortgage Corp.*, 292 F.3d 1004,

---

[6]Although Plaintiff invokes 12 U.S.C. § 2607(b) in his complaint, which prohibits fee-splitting, he stipulated at oral argument that his RESPA claim was based on the kick-back provision rather than the fee-splitting provision.

12

1011 (9th Cir. 2002) (citing Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers and Guidance Concerning Unearned Fees under Section 8(b), 66 Fed.Reg. 53052, (2001)) ("2001 Statement"). To determine whether a yield spread premium violates the kickback provision of RESPA, courts consider "(1) whether the goods or facilities were actually furnished or services were actually performed for the compensation paid and; (2) whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed." *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, 1207 (9th Cir. 2003) (citations omitted).

With respect to the types of services that may be provided under the first prong of the test, HUD has set forth the following list, cited with approval in *Schuetz*:

> (a) Taking information from the borrower and filling out the application; (b) analyzing the prospective borrower's income and debt and pre-qualifying the prospective borrower to determine the maximum mortgage that the prospective borrower can afford; (c) educating the prospective borrower in the home buying and financing process, advising the borrower about the different types of loan products available, and demonstrating how closing costs and monthly payments could vary under each product;(d) collecting financial information (tax returns, bank statements) and other related documents that are part of the application process; (e) initiating/ordering VOEs (verifications of employment) and VODs (verifications of deposit); (f) Initiating/ordering requests for mortgage and other loan verifications; (g) Initiating/ordering appraisals; (h) Initiating/ordering inspections or engineering reports; (i) Providing disclosures (truth in lending, good faith estimate, others) to the borrower; (j) Assisting the borrower in understanding and clearing credit problems; (k) Maintaining regular contact with the borrower, realtors, lender, between application and closing to appraise them of the status of the application and gather any additional information as needed; (l) Ordering legal documents; (m) Determining whether the property was located in a flood zone or ordering such service; and (n) Participating in the loan closing.

Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers 64 FR 10080, 10085 (1999) (cited in *Scheutz* at 292 F.3d at 1011). In a subsequent HUD statement, issued in 2001, HUD reiterates that the earlier list of services is still accurate, but notes that "compensable services for the first part of the test do not include referrals." *Scheutz*, 292 F.3d at 1011 (quoting HUD 2001 Statement).

13

The Ninth Circuit has explained that with respect to the second prong of the test, "the pivotal question is whether the mortgage broker's total compensation is reasonable." *Schuetz*, 292 F.3d at 1011. The court continued,

> Total compensation includes fees paid by a borrower and any yield spread premium paid by a lender, not simply the yield spread premium alone. *Id.* Total compensation to the broker must be reasonably related to the total value of goods or facilities provided or services performed; "simply delivering a loan with a higher interest rate is not a compensable service." *Id.* And payments must be commensurate with the amount normally charged for similar services in similar transactions in similar markets.

*Id*.

Here, Plaintiff has alleged that the $18,281.25 YSP paid by Realty was not for allowable services but rather, was simply a "steering fee" paid by Realty in return for the referral of Plaintiff to Realty by Summit, Cordova and Nafai. *See* Complaint, ¶¶ 44, 45. As discussed above, under the HUD guidelines that have been adopted by the Ninth Circuit, such a steering fee is impermissible under RESPA. As a result, the Court need not reach the second prong of the test to determine if the YSP was reasonable. Rather, assuming the facts alleged are true, the YSP constitutes a violation of 12 U.S.C. §2607(a). *See Maganallez v. Hilltop Lending Corp*., 505 F. Supp. 2d 594, 604 (N.D. Cal. 2007) (holding that where it was alleged that YSP was not reasonably related to services performed, plaintiff stated claim against mortgage broker under §2607(a) on basis that YSP was an illegal kickback).

The Court further concludes that Plaintiff states a claim under RESPA as to both Summit and Cordova on this claim. Although the Settlement Statement indicates that the YSP was paid to Summit, Plaintiff alleged in his Complaint that it was paid to both Summit and Cordova.

Because Plaintiff states a claim under RESPA as to both Summit and Cordova, and because the other *Eitel* factors also support entry of default judgment as to this claim, it is recommended that the Court enter default judgment against Summit and Cordova on the RESPA claim.

14

**D.  Remedy**

  **1.  Statutory Damages**

Under RESPA, "[a]ny person or persons who violate the prohibitions or limitations of [12 U.S.C. § 2607] shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." 12 U.S.C. § 2607(d)(2). Here, the Court has found that default judgment should be entered against both Cordova and Summit on Plaintiff's RESPA claim. Therefore, Cordova should be held jointly and severally liable for triple the amount of the YSP, that is, $54,843.75. *See Clifford v. FMF Capital, LLC*, 2007 WL 1701816 (W.D. Mich. June 11, 2007) (awarding three times amount of YSP where it was found to be an illegal kickback under RESPA).

  **2.  Attorneys' Fees and Costs**

Where a party prevails on a RESPA claim, the court "may award . . . the court costs of the action together with reasonable attorneys' fees." 12 U.S.C. § 2607(d)(5). Here, Plaintiff has prevailed on his RESPA claim. However, he has not offered any evidence reflecting his costs. Nor has he provided any time break-downs that would allow the Court to determine reasonable attorneys' fees, although the Court at oral argument on the Motion invited Plaintiff to submit such documentation.

With respect to attorneys' fees, Plaintiff's counsel concedes that he did not keep detailed time records because he was working on a contingency basis. *See* Flaxman Supp. Decl., ¶ 9. Flaxman estimates he spent 165 hours on the action but does not offer any explanation as to how this time was spent. Because Plaintiff has not provided evidence sufficient to determine his reasonable attorneys' fees, it is recommended that his request for attorneys' fees be denied.

Regarding costs, Plaintiff request $850.00 for the following items: 1) $350.00 filing fee; 2) $200.00 "courier fees and United States Mailing Fees;" and 3) $300.00 service of process. Motion at 19. Because Plaintiff did not provide evidence reflecting the courier and service fees (either in the

1  form of a declaration or invoices), these items should be denied. The Court should award the
2  $350.00 filing fee, however, as payment of the fee is reflected on the docket sheet in this action and
3  Local Rule 54-3(a) expressly authorizes such an award.

## IV. CONCLUSION

For the reasons stated above, the Motion should be granted in part and denied in part, as follows: Plaintiff's Motion should be denied as to Plaintiff's request for default judgment on his claims for breach of fiduciary duty and deceit; those claims should be dismissed with prejudice. Default judgment should be entered as to Summit and Cordova on Plaintiff's RESPA claim. Plaintiff should be awarded $54,843.75 in statutory damages and $350.00 in costs, for which Summit and Cordova are jointly and severally liable. Plaintiff's request for attorneys' fees should be denied.

Date:   September 11, 2008

_____
JOSEPH C. SPERO
United States Magistrate Judge

16